SCOTT PAPER COMPANY, Plaintiff,

and

Chester Davis, Intervenor,

v.

MOORE BUSINESS FORMS, INC., Defendant.

Civ. A. No. 77–199–JLL.

United States District Court, D. Delaware.

Oct. 2, 1984.

Rudolf E. Hutz and John D. Fairchild of Connolly, Bove, Lodge & Hutz, Wilmington, Del., and John W. Kane, Jr., Philadelphia, Pa., of counsel, for plaintiff.

Edward M. McNally of Morris, James, Hitchens & Williams, Wilmington, Del., and John J. Held, Jr., Edward W. Remus and Paul H. Berghoff of Allegretti, Newitt, Witcoff & McAndrews, Ltd., Chicago, Ill., of counsel, for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

Following a twelve-day bench trial and post-trial briefing, this Court entered its findings of fact and conclusions of law in the form of a 92-page opinion dated September 5, 1984. 594 F.Supp. 1051. (Docket Item ["D.I."] 197.) The Court held that the patents in suit owned by Scott Paper Company ("Scott") were valid, enforceable and had been wilfully infringed by Moore Business Forms, Inc. ("Moore"), and that the case was exceptional within the meaning of 35 U.S.C. § 285. (*Id.*) Judgment was entered in favor of Scott against Moore as of September 5, 1984, in the amount of $27,157,792.00. (D.I. 198 & 205.) Jurisdiction was retained for the purpose of awarding reasonable attorney fees to Scott. (D.I. 197 at ¶ 13.) In addition, Moore has moved to amend certain findings entered by this Court. These two remaining matters are now before the Court for disposition.

### I. ATTORNEY FEES

Scott has requested that it be awarded the following items as attorney fees (D.I. 201):

| | |
|---|---|
| For outside trial counsel | $383,731.00 |
| For in-house counsel | 69,000.00 |
| Direct litigation expenses | 107,425.00 |
| Total ................ | $560,156.00 |

| | |
|---|---|
| Prejudgment interest thereon | $139,486.00 |
| Grand Total .............. | $699,642.00 |

While Moore does not challenge the "reasonableness" of the amount of time and rates presented in the fee application by Scott's outside counsel, it does object to six aspects of the fee application, *i.e.* (1) in-house attorney fees, (2) expenses as fees, (3) attorney fees in connection with the reissue proceedings, (4) fees in preparing the fee application, (5) fees generated by the Scott/Davis dispute, and (6) interest upon attorney fees. (D.I. 207.)

Section 285 provides that in "exceptional cases" a court "may award reasonable attorney fees to the prevailing party in a patent case." 35 U.S.C. § 285. This Court has already found that this case was "exceptional." (D.I. 197.) The Court agrees with Moore that the time expended and the rates charged by Scott's outside counsel are entirely reasonable and clearly within the range normally charged by attorneys of comparable experience and expertise. *Chromalloy American Corp. v. Alloy Surfaces Co.*, 353 F.Supp. 429, 431 (D.Del. 1973).

■ The Court further finds that the time and rates sought for Scott's in-house counsel are reasonably based and justified. Scott's in-house counsel, John W. Kane, Jr., is a lawyer of extensive experience in patent prosecution and litigation. He participated throughout these proceedings, attended depositions and was involved in witness preparation, trial of the case and brief writing. Mr. Kane filled a position which would otherwise have been filled by outside counsel. The Court of Appeals for the Third Circuit awarded in-house counsel fees to an applicant in an insurance case, refusing to give the losing party the benefits of applicant's choice to use in-house counsel.

> If Pittsburgh's attorneys had refrained from activity, the workload and consequently the fee application of [outside counsel] would have been increased.

There is no reason in law or equity why the insurer should benefit from Pittsburgh's choice to proceed with some work through its own legal department. *Pittsburgh Plate Glass Co. v. Fidelity & Casualty Co. of New York*, 281 F.2d 538, 542 (3d Cir.1960). That principle applies here.

Awarding the value of in-house counsel's services accomplishes two purposes. First, it discourages the frivolous defense of an infringement action. If in-house counsel is a primary participant in a lawsuit and not awarded fees, then the losing party will be undeterred by the threat of a fee award, knowing that in-house counsel will not be compensated.

Second, the award will compensate a prevailing party for the time that could have been spent by in-house counsel on other corporate matters. As stated by one court when assessing fees against opposing counsel for filing a frivolous suit:

> A more realistic assessment of the situation would indicate that for every hour in-house counsel spent on this case defendants lost an hour of legal services that could have been spent on other matters. The value to defendants of this lost time is, of course, the amount it would require additional counsel to do the neglected work. Whether defendants actually hired additional counsel or went without legal advice on some matters is irrelevant as the value of the loss is the same. An award of reasonable fees will compensate defendants for this loss.

*Textor v. Board of Regents of Northern Illinois University*, 711 F.2d 1387, 1397 (7th Cir.1983).

■ Thus, the Court will award a portion of the fees requested by both Scott's outside and in-house counsel. These fees, however, will be reduced by five percent for the time estimated to have been devoted to Scott's dispute with the intervenor, Chester Davis ("Davis"). The Court realizes that these disputes were originally generated by Moore's wilful termination of

the Scott/Moore license agreement, but the extent of the dispute was in this Court's opinion also caused by Mr. Davis' distrust of Scott's intention and motives. This dispute, even though unreasonable on Mr. Davis' part as it turned out, should not be assessed against Moore. Therefore, the Court will reduce Scott's fee application for outside counsel of $383,731.00 by 5% and award the sum of $364,545.00 for this item. A reduction of five percent will be applied to the in-house counsel fee request of $69,000 and thereby award the sum of $65,550.00 for that item.

■ The Court, however, will not apply any further reduction to these fees. These allowances will include the fee for the reasonable time expended in preparing the elaborate fee application and briefs filed herein. This ruling is based on *Central Soya Co. v. Geo. Hormel & Company*, 723 F.2d 1573, 1578 (Fed.Cir.1983), where the Court of Appeals for the Federal Circuit specially approved the District Court's statement in *Codex Corp. v. Milgo Electronic Corp.*, 541 F.Supp. 1198, 1201 (D.Mass.1982), which held that attorney fees for time spent on the issue of attorney fees was allowable.

■ The above allowances also will not be reduced for the time incurred in the reissue proceedings which took place after this action was filed. The detailed findings and conclusions reached by the PTO in those proceedings were crucial to this Court's final determination. The Court finds that this activity in the peculiar circumstances of this litigation was "necessary to the case" within the concept set forth in *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1067 (Fed.Cir.1983), and *Codex Corp., supra* at 1201.

■ In addition, Scott will be allowed litigation expenses disbursed in prosecuting this patent infringement suit in the amount of $107,425.00 because the Federal Circuit has concluded that an award of attorney fees under Section 285 should include expenses incurred during prosecution of the lawsuit. Looking to the rationale behind the fee award under Section 285, that Court for the Federal Circuit stated:

The purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit. We interpret attorney fees to include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit.

When § 285 was adopted in its present form in the 1952 act, the only change from the prior statute, R.S. 4921, was the addition of the phrase "in exceptional cases," which was added to discourage conduct which fell within the scope of "exceptional," by requiring the party acting exceptionally to bear the expenses of the opposing party. It would be inconsistent with the intent of § 285 to limit the prevailing party to something less. Accordingly, we conclude that the award of expenses was properly within the scope of § 285.

*Central Soya Co. v. George A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed.Cir.1983). *See also Rohm and Haas Co. v. Crystal Chemical Co.*, 736 F.2d 688, 693 (Fed.Cir. 1983) ("Section 285 also permits the prevailing party to recover certain disbursements incurred during preparation for the case."); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d at 1069 ("Contrary to J–M's contention that *Lam's* disbursements were improperly granted, § 285 also permits the prevailing party to recover disbursements that were necessary for the case.").

■ Finally, the Court, in its discretion, will deny an award of prejudgment interest in the amount of $139,486.00 on the attorney fee award granted. In the first place, the attorney fees and expenses would have been disbursed in any event during the prosecution of this case and would not have been recoverable until this Court determined that the case was "exceptional." This determination was not made until September 5, 1984. Thus, it could not be said that Scott was out-of-pocket until that date. Secondly, the Court is of the opinion that

by doubling the judgment under Section 284 for wilfulness has made Scott more than "whole" for all sums expended in this case and that should be sufficient.

In summary, an award of attorney fees and expenses will be awarded to Scott as follows:

| | |
|---|---|
| All counsel fees | $430,095.00 |
| Litigation expenses | 107,425.00 |
| Total Award | $537,520.00 |

## II. MOORE'S MOTION TO AMEND FINDINGS

■ Moore seeks to amend the Court's findings to add two 1975 letters from counsel[1] to the trial record of this case which Moore claimed prior to trial were privileged. These two letters were identified by Moore during discovery, but based on the claim of privilege, they were not provided to Scott nor was any discovery permitted with respect to them. (D.I. 197 at 30.) In the pretrial order, Moore listed a host of potential trial exhibits but these two letters from counsel were never so identified which is a clear indication that Moore never intended to offer these documents in evidence.

At the trial, Moore's witness, Downie, testified generally that he had received the two opinions, although they had not been offered in evidence. Scott's attorney, Mr. Hutz, started to object, but the Court overruled Mr. Hutz and permitted Mr. Downie to continue with his explanation (Transcript ["Tr."] 1353). The Court did not make *any* ruling at that time or at any other time during trial, substantive or otherwise, that the written opinions would not be received in evidence if they were offered by Moore. The fact is, Moore never offered the opinions in evidence and this action is completely consistent with its position in the Pretrial Order that it would not offer the opinions as trial exhibits.

Moore now faults the Court for the fact that the opinions are not part of the trial record. That is not accurate, because the decision not to offer them in evidence was made by Moore before the Pretrial Order was filed, and that decision was never changed until after the trial had been concluded, the record closed, and the present motion filed.

Moore cites the case of *duPont v. United States*, 385 F.2d 780 (3d Cir.1967), in support of its position for introducing the letters after trial. That case, however, is inapposite because the plaintiff in *duPont* was *deprived* by the trial court's ruling of an opportunity to submit additional evidence. In *duPont*, the evidence in question was at least a part of the record in the court below, the only issue being the effect caused by the post-trial determination of its credibility. In the instant case, this Court never ruled against admitting the opinion letters, and it was Moore that intentionally chose not to offer them. As the Court of Appeals indicated in *duPont*, at page 783, the parties should be entitled to rely on the record as it was closed, and in the present instance the record is totally devoid of the two letters which Moore is proffering at this late date.

Nevertheless, the Court did acknowledge the existence of the unintroduced opinions when it found that "Moore's Downie made it very clear on cross-examination that the opinions of counsel were nothing more than window dressing to his decision to terminate the agreement." (D.I. 197 at 76.) The copies of the two opinions attached to Moore's motion now confirm that "window dressing" is all they ever were, at best.

The letter from Mr. March of the Watson, Cole firm was not an opinion at all. It cautioned that the Watson, Cole activities "are insufficient to support any particular firm conclusions" and that the letter merely recites certain "preliminary beliefs." It further explained that they had "the documents necessary to complete our study and

---

1. The two letters now belatedly presented are: Letter of July 10, 1975 from Watson, Cole, Grindle & Watson (D.I. 204, Ex. A), and letter of September 26, 1975 from Molinare, Allegretti, Newitt & Witcoff (D.I. 204, Ex. B).

provide a definitive opinion" if Moore should ever want one.

The letter from Allegretti of the Molinare, Allegretti firm is significant in four respects. First, there is no indication that counsel was informed by Moore or considered facts such as Moore's lengthy search for a suitable precursor, which was a total failure until Moore learned at PTSMH from the Davis patent. (D.I. 197 at 76.) Second, it specifically warned on page 5 that claim 11 of the Davis '327 patent is *not* "fully met by the Hinsberg article and the Green patents." Claim 11 of the '327 patent covers "[a] transfer sheet having upon its surface a coating containing ... substantially colorless" PTSMH. (*Id.* at 48.) That claim specifically describes Moore's MCP business forms (*id.* at 70), and that claim was asserted by Scott throughout as the representative claim of the '327 patent. (*Id.* at 27.) Third, the Allegretti opinion correctly cautioned Moore that a challenge to the validity of the patents "after cancellation of the license is, necessarily, a most difficult" posture for Moore to take. "I must, therefore, underscore my further view that such a course of action is inherently a hazardous one...." Fourth, all of this was in the context of an introductory paragraph by Mr. Allegretti acknowledging the "business judgments" which Moore was making. (*Id.* at 30–31, 77.)

The Allegretti opinion, despite its failure to evaluate all the facts, nevertheless warned Moore that claim 11 of the '327 patent was not fully met by the prior art, and if Moore cancelled the Scott/Moore license and challenged the validity of the patents, then "most difficult," inherently "hazardous" and "major" litigation would be involved. This substantiates the Court's prior opinion that Moore's infringement was a wilful and reckless business gamble.

Moore's motion to amend the Court's findings will be denied. An order will be entered in accordance with this memorandum opinion.