PPG INDUSTRIES, INC.,
Plaintiff–Appellee,

v.

CELANESE POLYMER SPECIALTIES
CO., INC., Defendant–Appellant.

No. 87–1437.

United States Court of Appeals,
Federal Circuit.

March 3, 1988.

Edward M. O'Toole, Marshall, O'Toole, Gerstein, Murray & Bicknell, Chicago, Ill., argued, for plaintiff-appellee.

Herbert Schwartz, Fish & Neave, New York City, argued, for defendant-appellant. With him on the brief were Patricia A. Martone and Ron E. Shulman. Also on the brief were John T. Ballantine, Ogden & Robertson, Louisville, Ky. and Andrew F. Sayko, Jr., Celanese Specialty Operations, Chatham, N.J., of counsel.

Before RICH, Circuit Judge, COWEN, Senior Circuit Judge, and BISSELL, Circuit Judge.

BISSELL, Circuit Judge.

Celanese Polymer Specialties Co., Inc. (Celanese) appeals that portion of the district court's order, *PPG Industries v. Celanese Polymer Specialties Co.*, 658 F.Supp. 555, 3 USPQ2d 1683 (W.D.Ky.1987), which awarded Celanese attorney fees for less than the amount it sought. We reverse and remand.

## BACKGROUND

PPG Industries, Inc. (PPG), as assignee, sued Celanese for infringement of its Jerabek patents, No. 4,031,050 ('050) and No. 3,984,299 ('299), both relating to the electrodeposition of coating compositions. *See generally PPG Indus. v. Celanese Polymer Specialties Co.*, 1 USPQ2d 1584 (W.D. Ky.1986) [Available on WESTLAW, 1986 WL 15564]. During discovery Celanese uncovered a reference, the Sattler patent, which disclosed subject matter similar to that claimed in the '050 and '299 patents. Discovery also revealed that PPG knew of, but had not disclosed, the reference to the United States Patent and Trademark Office (PTO) during prosecution of the patents in suit. To allow for filing and prosecution of reissue applications in the PTO, PPG moved for a stay of the district court's proceedings. The court, over the objections of Celanese, granted PPG's motion and stayed further judicial proceedings pending the outcome of the reissue proceedings. PPG agreed to be bound on all issues considered by the outcome of the reissue proceedings.

The Board of Patent Appeals and Interferences (Board) affirmed the examiner's rejection of all the claims in the reissue applications as unpatentable under 35 U.S. C. §§ 131, 132 (1982) for inequitable conduct and under 35 U.S.C. § 103 (1982 and Supp. III 1985) in view of the Sattler patent. On appeal, this court affirmed the Board's rejection of the reissue applications based on inequitable conduct. *In re Jera-*

*bek,* 789 F.2d 886, 229 USPQ 530 (Fed.Cir. 1986). Celanese actively participated as protestor and intervenor throughout all stages of these proceedings.

After our decision in *Jerabek,* the district court awarded Celanese attorney fees under 35 U.S.C. § 285 (1982). *PPG Indus.,* 658 F.Supp. 555, 3 USPQ2d 1683. However, Celanese appeals because it applied to the district court for an award of $1,281,-807.24 in attorney fees and disbursements, but the district court awarded only $320,-328.97, of which $273,107.31 was for attorney fees. *PPG Indus.,* 658 F.Supp. at 558, 566, 3 USPQ2d at 1684, 1690. Specifically, Celanese appeals the trial court's denial of its request for the following categories of fees:

1. attorney fees paid to Celanese's outside counsel in opposing PPG's reissue applications before the PTO;

2. attorney fees paid to outside counsel in opposing PPG's consolidated appeal to this court from the decisions of the Board; and

3. attorney fees for in-house counsel during the time period up to January 1, 1980 in which in-house counsel were lead trial counsel.

### ISSUES

Whether the district court abused its discretion in denying Celanese attorney fees incurred for:

1. its participation in the reissue proceedings instituted by PPG in the PTO;

2. its participation in PPG's consolidated appeal of the Board's decisions to this court; and

3. the services of its in-house litigation counsel.

### OPINION

█ Our appellate jurisdiction in this case turns on whether the district court issued a final decision. *See* 28 U.S.C. § 1295(a)(1)(1982). "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945) (citation omitted); *see Stringfellow v. Concerned Neighbors in Action,* —— U.S. ——, 107 S.Ct. 1177, 1181, 94 L.Ed.2d 389 (1987) (quoting *Catlin,* 324 U.S. at 233, 65 S.Ct. at 633–34). Here the district court decided the attorney fees award on its merits and entered its "final and appealable order." *PPG Indus.,* 658 F.Supp. at 566, 3 USPQ2d at 1690. *See Bandag, Inc. v. Al Bolser Tire Stores, Inc.,* 719 F.2d 392, 393, 219 USPQ 1049, 1049–50 (Fed.Cir.1983) (court that enters judgment is best qualified to assert whether it intended that judgment as final). Under these circumstances, the district court's order is a final decision over which we may exercise appellate review.

In reviewing an award of attorney fees under 35 U.S.C. § 285, generally we first consider whether the district court's fact finding of an exceptional case was clearly erroneous, and whether the district court invoked the proper legal standards in making this decision. *Reactive Metals and Alloys Corp. v. ESM, Inc.,* 769 F.2d 1578, 1582–83, 226 USPQ 821, 824 (Fed.Cir.1985). Because the parties in this case do not dispute either the findings or legal analysis underlying the district court's exceptional case determination, however, these issues are not before us.

After concluding this was an exceptional case, the district court went on to exercise its discretion in awarding fees. *PPG Indus.,* 1 USPQ2d at 1585–86. This brings us to the next step in our analysis: determining whether the district court abused its discretion in making the award. *Reactive Metals,* 769 F.2d at 1583, 226 USPQ at 824. That is the sole question before us on appeal. Specifically, Celanese must convince us that the district court abused its discretion in excluding the noted categories of fees from the award.

In determining if the district court abused its discretion in excluding these categories of fees, the principles guiding this court are whether the district court's decision was based on an erroneous conclusion of law or clearly erroneous factual findings, or whether the district court committed a clear error of judgment. *Amstar*

*Corp. v. Envirotech Corp.,* 823 F.2d 1538, 1542, 3 USPQ2d 1412, 1415 (Fed.Cir.1987); *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1022, 228 USPQ 926, 930 (Fed.Cir.1986); *Seattle Box Co. v. Industrial Crating & Packing Inc.,* 756 F.2d 1574, 1581, 225 USPQ 357, 363 (Fed.Cir. 1985). To prevail on appeal, this is what Celanese must establish.

### I. The Reissue Proceedings

■ Celanese requested $275,827.25 for legal services rendered before the PTO in opposing PPG's reissue applications. After reviewing conflicting, non-controlling case law, the trial court denied the amount requested in its entirety, concluding that the better view was not to award attorney fees for any of the services rendered before the PTO. *PPG Indus.,* 658 F.Supp. at 560–61, 3 USPQ2d at 1686. The district court cited *Webb v. Dyer County Board of Education,* 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985), as support for its conclusion. *Id. Webb* held that attorney fees should not be awarded in non-mandatory, non-judicial proceedings where the party has the option of proceeding directly to Court unless the party can demonstrate that the work product "was both useful and of a type ordinarily necessary." *Webb,* 471 U.S. at 243, 105 S.Ct. at 1929. The district court reasoned:

> In this case, as in *Webb,* resort to the non-judicial body is non-mandatory, and a party has the option of proceeding directly to Court.
>
> The Court is fully aware of [Celanese's] contention that resort to the [PTO] in this case was not "voluntary" in the strictest sense, since the proceedings in that forum substituted for judicial proceedings. We do not believe that this compels payment of fees.... Furthermore, Celanese cannot demonstrate that [its] work before the [PTO] is "ordinarily necessary" in a case of this type.

*PPG Indus.,* 658 F.Supp. at 561, 3 USPQ2d at 1686–87.

Due to the unique circumstances of this case, the district court erred in relying on *Webb.* The PTO permitted Celanese's participation in PPG's reissue applications only because of the now repealed "Dann amendments." Although proceedings before the PTO ordinarily are *ex parte,* in the late 1970's the regulations governing PTO reissue proceedings were amended by the so-called "Dann amendments" to allow *inter partes* protestor participation. *See generally PIC, Inc. v. Prescon Corp.,* 485 F.Supp. 1302, 1303–05, 205 USPQ 228, 233–34 (D.Del.1980); *see also* 47 Fed.Reg. 21,-749 (1982). The purpose of these amendments was to economize the time and expense for both the courts and the litigants. *See Fisher Controls Co. v. Control Components, Inc.,* 443 F.Supp. 581, 582, 196 USPQ 817, 819 (S.D.Iowa 1977); *see also New Patent Office Rules May Aid Patent Litigation,* 9 The Third Branch 7, 7–8 (Sept. 1977). In practice, as clearly demonstrated by this case, the desired results were not achieved. After enactment of legislation providing for reexamination, the PTO repealed the "Dann amendments" in 1982, thus eliminating extensive *inter partes* protestor participation in reissue proceedings. 47 Fed.Reg. 21,746 (1982).

For Celanese, participation in PPG'S reissue application proceedings was not optional. The parties and the district court clearly intended to replace the district court litigation with the reissue proceedings. PPG forced Celanese to perform in the PTO precisely the same type of work Celanese would have performed had the case proceeded to trial. Indeed, PPG argued before the trial court that these reissue proceedings would permit both sides to present their positions for reconsideration by the PTO in an *inter partes* setting and thus shorten or possibly obviate the need for a trial.

Therefore, because the "Dann amendments" permitted Celanese's extensive participation in the reissue proceedings, and Celanese in fact had no other option available, *Webb* provides no support for the trial court's denial of attorney fees for work performed in the reissue proceedings. Thus in denying these attorney fees, the trial court misapplied the law applicable to fee awards. On remand, the district court need not evaluate which portions of Cela-

nese's work product in the reissue proceedings were "useful and of a type ordinarily necessary," *Webb*, 471 U.S. at 243, 105 S.Ct. at 1929; as the entire work product was necessary to the case. *See Scott Paper Co. v. Moore Business Forms, Inc.*, 604 F.Supp. 835, 838, 224 USPQ 565, 566 (D.Del.1984) (reissue proceedings under peculiar circumstances of this litigation necessary to the case). Recognizing that the trial court has *broad* discretion in calculating the amount of fees, *cf. Lam Inc. v. Johns–Manville Corp.*, 718 F.2d 1056, 1068–69, 219 USPQ 670, 678 (Fed.Cir.1983), we hold only that Celanese is entitled to reasonable attorney fees based upon the premise that the reissue proceedings substituted for the district court litigation on all issues considered by the PTO and the Board.

## II. Federal Circuit Appeal

In its application for fees, Celanese requested $73,140.00 for legal services rendered to it as an intervenor in PPG's consolidated appeal of the Board's decisions to this court. The district court denied this amount in its entirety citing *Rohm & Haas Co. v. Crystal Chemical Co.*, 736 F.2d 688, 222 USPQ 97 (Fed.Cir.1984), and Federal Circuit Local Rule 20(a)(1). The court stated that "in light of the fact that application for attorney's fees may be made to the Federal Circuit under its Rule 20(a)(1) [w]e believe that the entire amount of the fees spent before the Federal Circuit should be disallowed...." *PPG Indus.*, 658 F.Supp. at 561–62, 3 USPQ2d at 1687.

■ Here, too, the district court legally erred. Rule 20 does not prohibit the district court from awarding fees for prior appeals where such appeals are an integral part of the ongoing litigation; indeed *Rohm & Haas*, 736 F.2d at 692, 222 USPQ at 100, supports the proposition that the power to award attorney fees for appellate work is not the exclusive domain of an appellate court. Our conclusion is consistent with the holding of the Supreme Court in *Perkins v. Standard Oil Co.*, 399 U.S. 222, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970), and with the treatment of attorney fees

awards under other statutory schemes by other circuits. *See Local 17, Int'l Ass'n of Heat v. Young*, 775 F.2d 870, 872–73 (7th Cir.1985) (district court's award of attorney fees for work performed before Supreme Court appropriate in Labor Management Reporting & Disclosure Act case); *Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 588–91 (9th Cir.1984) (action under Employee Retirement Income Security Act remanded to district court to reconsider award of attorney fees for appellate work); *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1527 (10th Cir. 1984) (antitrust action remanded to district court to award appropriate attorney fees for appellate work), *aff'd*, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985); *Williams v. Alioto*, 625 F.2d 845, 850 (9th Cir.1980) (case remanded to district court for determination of attorney fees on appeal in civil rights action), *cert. denied*, 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981).

■ Under the peculiar circumstances of this case, PPG's appeal in *Jerabek* was an integral part of the reissue proceedings that virtually replaced the district court litigation. This totality of proceedings constituted the basis for the district court's finding that the case was "exceptional" within the meaning of 35 U.S.C. § 285. The trial court recognized this in November 1982 when it stayed all further proceedings in the district court "until the conclusion of the litigation before the [PTO] and the ... Federal Circuit." Celanese's efforts before this court in the *Jerabek* appeal were merely an extension of the work already performed before the PTO—work which replaced the district court litigation. Therefore, on remand, the district court cannot exclude from the award reasonable fees for services performed by Celanese's attorneys in PPG's appeal to this court in *Jerabek*.

## III. In–House Counsel Fees

Celanese requested $338,400.00 for legal services rendered by in-house counsel during the time period that they were lead litigation counsel. The district court denied all such fees on the basis of a lack of

documentation, citing the lack of contemporaneous time records and an inadequate basis for examining the reasonableness of Celanese's requested fees. *PPG Indus.,* 658 F.Supp. at 562, 3 USPQ2d at 1687.

During the time that in-house counsel acted as lead trial counsel there was no judicial requirement for contemporaneous time records to qualify for a fee award. *Cf. New York Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147 (2d Cir.1983). "While contemporaneous time records are the most desirable way of proving time spent, such is not the only means." *Delaware Valley Citizens v. Commonwealth of Pa.,* 581 F.Supp. 1412, 1420 (E.D.Pa.1984) (fee award affirmed but *increase* in fee award based on superior quality of counsel's performance reversed), *aff'd,* 762 F.2d 272 (3d Cir.1985), *aff'd-in-part and rev'd-in-part on other grounds,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), *modified on other grounds,* — U.S. —, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). Attorney fees are allowable if they are based on records that are substantially reconstructed and reasonably accurate. *Id.* We disagree with the trial court that Celanese did not present sufficient reconstructed records on which to base an award. The record contains approximately 500 pages of documentation consisting of affidavits supported by extensive corroborative business records. This documentation was prepared in November 1981—only 22 months after the end of the time period at issue. Based on this record, we conclude that the trial court erred in concluding that it could not examine the reasonableness of in-house counsel's efforts. Although we hold that the failure to award any fees was an abuse of discretion, we call attention to the well-established rule that insufficient documentation may warrant a reduction in the fees. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) ("A district judge may not, in my view, authorize the payment of attorney's fees unless the attorney involved has established by clear and convincing evidence the time and effort claimed and has shown that the time expended was necessary to achieve the results obtained." *Id.* at 440-

41, 103 S.Ct. at 1943 (Burger, C.J., concurring)); *see also New York Ass'n For Retarded Children,* 711 F.2d at 1148; *Wojtkowski v. Cade,* 725 F.2d 127, 130 (1st Cir.1984); *Souza v. Southworth,* 564 F.2d 609, 612 (1st Cir.1977). The amount of fees to be awarded as in-house counsel fees here must necessarily be left to the judgment of the district court. We intimate no opinion on the amount which Celanese is entitled to recover for these services.

Although not at issue here, the district court indicated that in calculating fees for in-house counsel it was compelled to reject the use of a cost-based standard and was limited to the use of a private firm market rate standard. *PPG Indus.,* 658 F.Supp. at 562, 3 USPQ2d at 1687. We note that in this circuit reasonable rates for in-house counsel may be calculated based on cost plus overhead. *Goodrich v. Department of the Navy,* 733 F.2d 1578, 1579 (Fed.Cir. 1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 958, 83 L.Ed.2d 965 (1985). The implication of using a private firm market standard is to allow a nonlegal business corporation to use the services of in-house counsel, and reap a profit therefrom. We know of no authority to support this practice. *See National Treasury Employees Union v. Department of Treasury,* 656 F.2d 848, 851-55 (D.C.Cir.1981).

## CONCLUSION

The order of the district court is reversed and the case remanded for proceedings consistent with this opinion.

**REVERSED AND REMANDED**

BISSELL, Circuit Judge, additional views:

Abuse of discretion is a "verbal coat of ... many colors." *See* Friendly, *Indiscretion About Discretion,* 31 Emory L.J. 747, 762-63 (1982) (quoting *United States v. L.A. Tucker Truck Lines,* 344 U.S. 33, 39, 73 S.Ct. 67, 70, 97 L.Ed. 54 (1952) (Frankfurter, J., dissenting)). Accordingly, legal scholars attempting to define abuse of discretion after extensive rhetoric often come to the conclusion that no better definition

exists than Justice Stewart's definition of pornography—you know it when you see it. Because of a potential inconsistency in the law of this circuit, nevertheless, I am compelled to comment on how this court reviews whether a district court has abused its discretion in arriving at a particular decision.

## I.

In one of the first decisions of this court articulating our appellate review standard for abuse of discretion, *Seattle Box Co. v. Industrial Crating & Packing Inc.*, 756 F.2d 1574, 225 USPQ 357 (Fed.Cir.1985), we stated:

Abuse of discretion may be established by showing that the district court either made an error of law, or a clear error of judgment or made findings which were clearly erroneous.

756 F.2d at 1581, 225 USPQ at 363.

After listing the elements necessary to support an infringement damage award based on lost profits, this court in *Seattle Box* held that because the infringer had failed to establish that the district court made any error of law or was clearly erroneous in its fact findings regarding these elements, the district court's award of damages did not constitute an abuse of discretion. *Id.* In *Seattle Box*, this court *applied* our standard of review as follows: the discretionary decision, if *founded* on an error of law or clearly erroneous fact findings, constitutes an abuse of discretion.

On reviewing a patent infringement damage award, this court in *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 3 USPQ2d 1412 (Fed.Cir.1987), provided a translation of the standard as applied in *Seattle Box* by stating:

To prevail on its appeal from the damages judgment, [the infringer] must convince this court that the district court's decision is based on an erroneous conclusion of law, clearly erroneous factual findings, or a clear error of judgment amounting to an abuse of discretion.

823 F.2d at 1542, 3 USPQ2d at 1415. In my view, the *applied standard* in *Seattle Box* comports with the *stated standard* in *Amstar.*

In *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022, 228 USPQ 926, 930 (Fed.Cir.1986), this court set forth the standard in yet different, but entirely consistent, language:

An abuse of discretion occurs when (1) the court's decision is "clearly unreasonable, arbitrary or fanciful" (*Northrop Corp. [v. McDonnell Douglas Corp.]*, 751 F.2d at 399 [ (D.C.Cir.1984) ]); (2) the decision is based on an erroneous conclusion of law (*Ariel [v. Jones ]*, 693 F.2d [1058] at 1060 [ (11th Cir.1982) ], *citing Premium Service Corp. [v. Sperry & Hutchinson Co.]*, 511 F.2d [225] at 229 [ (9th Cir.1975) ]); (3) the court's findings are clearly erroneous (*Deitchman [v. E.R. Squibb & Sons, Inc.]*, 740 F.2d [556] at 564 [ (7th Cir.1984) ]); or (4) the record contains no evidence on which the district court rationally could have based its decision (*e.g., Ariel*, 693 F.2d at 1060). However, "[t]he phrase [abuse of discretion] means ... that the court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Kern v. TXO Production Corp.*, 738 F.2d 968, 970 (8th Cir.1984); *Dart Industries, Co.*, 649 F.2d [646] at 648 [ (9th Cir.1980) ], *citing Premium Service Corp.*, 511 F.2d at 229. The court in *Premium* noted the hesitancy with which reviewing courts should address a matter left to the discretion of the district court: "Such abuses must be unusual and exceptional; we will not merely substitute our judgment for that of the trial judge." 511 F.2d at 229 (citation omitted).

785 F.2d at 1022, 228 USPQ at 930.

## II.

"[D]iscretionary choices are not left to a [district] court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" Friendly, *supra*, at 784 (quoting statement in *United States v. Burr*, 25 F.Cas. 30, 35 (C.C.Va.1807) (No. 14,692d) by Chief Justice Marshall during his tenure as trial judge). Thus on appeal

of a discretionary district court ruling, we must presuppose that the district court understood and applied the applicable law and took into account all the circumstances of the case. Reversal, however, is warranted if the appellant establishes that such presupposition was misplaced—that the district court misunderstood or misapplied the applicable law or made clearly erroneous factual findings. Although various errors of law, fact, substance and form, singly or in combination, may affect the relief granted at the trial level, if the error did not actually form the basis for the determination appealed, no abuse of discretion will have occurred because the error is harmless. When the error, however, does form the basis for the district court's decision, we must vacate and remand because the decision results from an improvident exercise of the district court's discretion.

If the district court makes proper findings of fact and correctly applies the relevant law to those facts, or if none underlie the discretionary decision, can it then be established in this circuit that the district court has committed a clear error of judgment? Yes, but only if we "come close to finding that the trial court had taken leave of its senses." Friendly, *supra,* at 763. Discretion, in this sense, is abused if the record contains no basis on which the district court rationally could have made its decision or if the judicial action is arbitrary, fanciful or clearly unreasonable. This is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the district court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the district court abused its discretion. Such abuses must be unusual and exceptional; we will not merely substitute our judgment for that of the district judge.

### III.

In conclusion, our cases which set forth our standard of review of a discretionary ruling by a district court are consistent. To overturn a discretionary ruling of a district court, the appellant must establish

that the ruling is based upon clearly erroneous findings of fact or a misapplication or misinterpretation of applicable law or that the ruling evidences a clear error of judgment on the part of the district court.