# United States Court of Appeals for the Federal Circuit

_____

**REALTIME ADAPTIVE STREAMING LLC,**
*Plaintiff-Appellant*

**v.**

**NETFLIX, INC., NETFLIX STREAMING SERVICES, INC.,**
*Defendants-Cross-Appellants*

_____

2021-1484, 2021-1485, 2021-1518, 2021-1519

_____

Appeals from the United States District Court for the Central District of California in Nos. 2:19-cv-06359-GW-JC, 2:19-cv-06361-GW-JC, Judge George H. Wu.

_____

Decided: July 27, 2022

_____

PHILIP WANG, Russ August & Kabat, Los Angeles, CA, argued for plaintiff-appellant. Also represented by REZA MIRZAIE, SHANI M. WILLIAMS.

TODD RICHARD GREGORIAN, Fenwick & West, LLP, San Francisco, CA, argued for defendants-cross-appellants. Also represented by J. DAVID HADDEN, SAINA S. SHAMILOV, Mountain View, CA.

_____

Before NEWMAN, REYNA, and CHEN, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* CHEN.

Opinion concurring-in-part, dissenting-in-part filed by *Circuit Judge* REYNA.

CHEN, *Circuit Judge.*

Plaintiff-Appellant Realtime Adaptive Streaming LLC (Realtime) filed three separate patent infringement actions against Defendants-Cross-Appellants Netflix, Inc. and Netflix Streaming Services, Inc. (collectively, Netflix). Realtime first asserted six patents in the District of Delaware. While the Delaware action was ongoing, Netflix filed seven petitions for *inter partes* review before the Patent Trial and Appeal Board seeking a determination that many of the claims asserted in the Delaware action were unpatentable. Netflix also moved to dismiss the complaint for failure to state a claim, arguing that four of the six asserted patents were ineligible under 35 U.S.C. § 101. Netflix fully briefed, and Realtime full responded to, those patent-ineligibility theories. Following institution of all seven *inter partes* review proceedings and a thorough report and recommendation from the Delaware magistrate judge finding claims of four of the patents ineligible under § 101, Realtime voluntarily dismissed the Delaware action—before the district court could rule on the magistrate judge's ineligibility findings.

Although Realtime was done with Delaware, it was not done with Netflix. The next day, Realtime started fresh, re-asserting the same six patents against Netflix, this time in the Central District of California—despite having previously informed the Delaware court that transferring the Delaware action across the country to the Northern District of California would be inconvenient and an unfair burden on Realtime. Netflix then simultaneously moved for attorneys' fees and to transfer the California actions back to Delaware. Prior to a decision on either motion, Realtime again avoided any court ruling by voluntarily dismissing its case.

Netflix then renewed its motion for attorneys' fees for the California actions as well as the related Delaware action and *inter partes* review proceedings. The district court awarded fees for both California actions pursuant to § 285 and, in the alternative, the court's inherent equitable powers. The district court declined to award fees for the related Delaware action or *inter partes* review proceedings under either § 285 or Federal Rule of Civil Procedure 41(d).[1] Realtime now appeals the court's fee award for the California actions and Netflix cross-appeals the court's denial of fees for the related proceedings. Because we hold that the district court did not abuse its discretion in awarding fees pursuant to its inherent equitable powers or in denying fees for the related proceedings, we affirm. We need not reach the question of whether the award also satisfies the requirements of § 285.[2]

---

[1]     The parties dispute whether Rule 41(d) permits a district court to award attorneys' fees. However, as we explain below, because we affirm the district court's decision to not award fees for the non-California proceedings, we need not decide the issue.

[2]     Section 285 permits a court to award attorneys' fees in "exceptional cases" to "the prevailing party." On appeal, Realtime challenges whether its two voluntary dismissals rendered Netflix a prevailing party. But we need not resolve that question here. A district court may rely on its inherent equitable powers to award attorneys' fees even if there is a statutory provision creating an alternative vehicle. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) ("We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above."); *id.* at 49 ("The Court's prior cases have indicated that the inherent power of a court can be invoked even if procedural rules exist which sanction the same

I

The parties have been adverse in three district court actions and seven *inter partes* review proceedings involving the same six patents and the same accused products.

The events leading to the award of attorneys' fees at issue began on November 21, 2017, when Realtime filed a patent infringement action against Netflix in the District of Delaware. J.A. 3672–3742. In the Delaware action, Realtime asserted six patents: U.S. Patent Nos. 7,386,046 ('046 patent); 8,634,462 ('462 patent); 8,934,535 ('535 patent); 9,578,298 ('298 patent); 9,762,907 ('907 patent); and 9,769,477 ('477 patent). J.A. 3674. The '462 patent later reissued as U.S. Patent No. RE46,777 ('777 patent). J.A. 354. In response, Netflix moved to dismiss the complaint, arguing not only that Realtime failed to sufficiently plead direct, contributory, and induced infringement, but also that four of the six patents were ineligible under 35 U.S.C § 101.[3] J.A. 816. While the motion to dismiss was pending, Netflix moved to transfer the case to the Northern District of California for convenience and Realtime opposed. In its opposition brief, Realtime vehemently argued that it lacked any ties to California and that moving the case to California would "lead to greater expense, additional travel, and more work for Realtime," leading to an

---

conduct."); *see also Miller v. Cardinale*, 361 F.3d 539, 551 (9th Cir. 2004) (footnote omitted) ("The Supreme Court has emphatically rejected the notion that the advent of 28 U.S.C. § 1927 and the sanctioning provisions in the Federal Rules of Civil Procedure displaced the inherent power to impose sanctions for bad faith conduct." (citing *Chambers*, 501 U.S. at 49–50)).

[3]    Netflix identified the '535, '477, '907, and '046 patents as ineligible under § 101.

"unfair" burden on Realtime. J.A. 3813–14; J.A. 3817. The Delaware court denied the motion to transfer. J.A. 612.

Then, on December 12, 2018, the Delaware magistrate judge, after full briefing by the parties, issued a detailed report and recommendation advising the court to find the four patents challenged under § 101 to be ineligible. J.A. 975–85. In that report, the magistrate judge separately analyzed representative claims from each of the four challenged patents under the two-step framework set forth by the Supreme Court. The magistrate judge considered both parties' arguments and compared the challenged claims to this court's precedent, setting forth a thorough, fully reasoned analysis for why the asserted claims were directed to an ineligible abstract idea. J.A. 968–85.

Realtime subsequently moved to amend its complaint. J.A. 3961–74. In that motion, Realtime pointed to its related patents that purportedly showed "various technologists were *still* struggling to solve" the problem identified in the asserted patents. J.A. 3968. However, in parallel actions involving different defendants, the same district court judge invalidated all of those related patents, finding them to be directed to ineligible subject matter. J.A. 3995–96. The same order from the parallel actions also denied Realtime's earlier motions to amend its complaints "for futility." J.A. 3996.

If the mounting threat of ineligibility for four of the patents were not enough, beginning from January to May of 2019, the Patent Trial and Appeal Board began instituting *inter partes* review proceedings for all six of the asserted patents on a rolling basis. J.A. 6005–33 (instituting *inter partes* review for the '535 patent); J.A. 6061–6106 (for the '298 patent); J.A. 6034–60 (for the '777 patent); J.A. 6106–43 (for the '477 patent); J.A. 5874–5907 (for the '907 patent); J.A. 5908–68 (for the '477 patent); J.A. 5969–6004 (for the '046 patent).

By little coincidence, on July 22, 2019, right after the district court found Realtime's related patents in the parallel actions to be ineligible under § 101, but before the same district court could rule on the magistrate judge's ineligibility recommendation for these patents, Realtime voluntarily dismissed its Delaware action.  J.A. 4000.

For most plaintiffs, these circumstances would signal the end of litigation.  Realtime, however, rebooted the litigation against Netflix in the form of two new patent infringement actions in the Central District of California—a forum that by that time had already reached a more favorable conclusion on patent-eligibility for some of the claims. *Realtime Adaptive Streaming LLC v. Netflix, Inc.*, No. 2:19-cv-06359, 2020 WL 8024356, at *7 (C.D. Cal. Nov. 23, 2020) (*Fees Award*); *see also Realtime Adaptive Streaming LLC v. Google LLC*, No. 2:18-cv-03629 (C.D. Cal. Oct. 25, 2018), Dkt. No. 36.  The first complaint asserted the '298 patent and the '777 reissue of the '462 patent, J.A. 55, and the second complaint asserted the four patents the Delaware magistrate judge recommended finding ineligible under § 101, J.A. 108.  In effect, Realtime divided the Delaware action in two—asserting the same patents, but sequestering the patents known to be vulnerable under § 101.  By heading to California, Realtime dodged the adverse magistrate recommendation under consideration by the district court judge who had already found five related patents to be ineligible.

Shortly thereafter, Netflix simultaneously moved to transfer both California actions back to Delaware and for attorneys' fees.  J.A. 38; J.A. 46–47.  Realtime again opposed the transfer, *this time* arguing that California was more convenient than Delaware despite:  (1) the Delaware

court's experience with most of the asserted patents,[4] (2) Realtime's original selection of that forum, and (3) Realtime's earlier protests in the Delaware action that a transfer to California would be an unfair burden. *See, e.g.*, J.A. 3365. Following briefing on the motion to transfer (and the day before oral argument on that motion), but before the parties fully briefed the fees motion, Realtime voluntarily dismissed both California actions. J.A. 3615; J.A. 3618. At the time of the dismissals, the California court had not yet made any substantive determinations.

After this second round of voluntary dismissals, Netflix renewed its motion for attorneys' fees for: (1) the California actions, (2) the original Delaware action, and (3) the related *inter partes* review proceedings. J.A. 3620–70; J.A. 4881–83. The California court awarded fees for the California actions but declined to award fees for the related Delaware and *inter partes* review proceedings. *Fees Award* at \*10. In particular, the court concluded that Realtime's litigation conduct justified awarding fees for the California actions under either § 285 or the court's inherent equitable powers. *Id.* at \*11. For the related actions, the court concluded that an award of fees was not warranted under either § 285 or Rule 41(d). *Id.* at \*10.

This appeal and cross-appeal followed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

A district court "may award attorneys' fees when the interests of justice so require." *Hall v. Cole*, 412 U.S. 1, 4–5 (1973). The Supreme Court has repeatedly recognized the propriety of such an award when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."

---

[4]    On September 20, 2019, Realtime added previously-unasserted U.S. Patent No. 8,054,879 to one of the California actions.

*Chambers*, 501 U.S. at 45–46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980). Because a district court's inherent power to impose sanctions in the form of attorneys' fees is not a substantive patent question, we apply the law of the regional circuit, here, the Ninth Circuit. *AntiCancer, Inc. v. Pfizer, Inc.*, 769 F.3d 1323, 1328 (Fed. Cir. 2014). Under Ninth Circuit precedent, the court must find that the sanctioned behavior "constituted or was tantamount to bad faith." *Haeger v. Goodyear Tire & Rubber Co.*, 793 F.3d 1122, 1132 (9th Cir. 2015) (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006)), *rev'd on other grounds*, 137 S. Ct. 1178 (2017). A determination that a party has engaged in "willful actions" with "an improper purpose" can satisfy the bad faith requirement. *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001). Such actions include "a full range of litigation abuses," such as "delaying or disrupting the litigation," *Haeger*, 793 F.3d at 1133 (first quoting *Chambers*, 501 U.S. at 47; and then *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997)), and can include actions consisting of "making a truthful statement or a non-frivolous argument or objection" for an improper purpose, *Fink*, 239 F.3d at 992. However, a finding that a party engaged in bad faith conduct does not compel the imposition of sanctions, which "is within the sound discretion of the district court." *Haeger*, 793 F.3d at 1131 (quoting *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1109 (9th Cir. 2005)).

We also apply Ninth Circuit law to an award or denial of "costs" pursuant to Rule 41(d). *See Shum v. Intel Corp.*, 629 F.3d 1360, 1370 (Fed. Cir. 2010) (citing *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1184 (Fed. Cir. 1996)). Under Rule 41(d) a district court "may" award costs "if a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant."

Federal Circuit precedent applies to a district court's decision to award fees pursuant to § 285. *Blackbird Tech LLC v. Health in Motion LLC*, 944 F.3d 910, 914 (Fed. Cir. 2019) ("We apply Federal Circuit case[]law to the § 285 analysis, as it is unique to patent law." (quoting *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1366 (Fed. Cir. 2007))). Under § 285, a district court "may award" attorneys' fees to "the prevailing party" in "exceptional cases."

Both the Ninth Circuit and this court review a district court's decision regarding whether to award fees for abuse of discretion. *Haeger*, 793 F.3d at 1130 (reviewing a district court's award of attorneys' fees pursuant to its inherent powers for abuse of discretion); *Arunachalam v. IBM*, 989 F.3d 988, 996 (Fed. Cir. 2021) (same); *Blackbird Tech*, 944 F.3d at 914 (reviewing a district court's award of attorneys' fees pursuant to § 285 for abuse of discretion); *cf. Draper v. Rosario*, 836 F.3d 1072, 1087 (9th Cir. 2016) (reviewing a district court's award of costs pursuant to Federal Rule of Civil Procedure 54(d)(1) for abuse of discretion).

Accordingly, we will not overturn the district court's decision regarding whether to award attorneys' fees "unless the court committed an error of law or the court's factual determinations were clearly erroneous." *Lasar*, 399 F.3d at 1109; *see also Blackbird Tech*, 944 F.3d at 914.

### III

### A

The district court awarded Netflix attorneys' fees for both California actions pursuant to its inherent equitable powers. *Fees Award* at \*11. The district court reasonably found Realtime's conduct in the California actions "improper," "exceptional," and "totally unjustified." *Id.* at \*6. When Realtime renewed its lawsuit in California, Realtime had in hand: (1) the Delaware magistrate judge's report recommending the court find that claims of four asserted patents were ineligible under § 101, (2) the Delaware

judge's ruling in parallel actions that five related patents (that Realtime claimed helped its cause) were themselves patent-ineligible, and (3) Patent Trial and Appeal Board decisions instituting *inter partes* review proceedings, indicating that Netflix had demonstrated a reasonable likelihood of success in proving at least one claim of each patent unpatentable. *Id.* The district court also noted that Realtime knew, upon filing the California actions, that the Central District of California had recently "reached a more favorable ruling regarding the patent eligibility of [the same four patents] in another case." *Id.* at *7. Realtime undoubtedly realized that by refiling in California, it could effectively erase the Delaware magistrate judge's fulsome and compelling patent-ineligibility analysis and findings.

In addition to Realtime's efforts to avoid an adverse patent-eligibility determination, Realtime also resisted transfer back to the forum it originally chose. Contrary to earlier arguments that litigation should remain in Delaware because litigating in California would be inconvenient, *id.*, and, in fact, "unfair," J.A. 3813–14, Realtime refiled in California. It then fought transfer back to Delaware, arguing that relevant witnesses and evidence are in California and that Delaware would *not* be more convenient. J.A. 3365–68. Realtime also argued that judicial economy weighed against transfer back to Delaware despite that district court's experience with, and now-wasted substantive analysis of, the asserted patents. J.A. 3369–70; *see also Fees Award* at *8. The district court correctly highlighted these contradictions to support a finding of "impermissible forum shopping."

Ultimately, Realtime was aware "that its lawsuit in Delaware was undeniably tanking," making its decision to "run off to another jurisdiction in hopes of getting a more favorable forum [] totally unjustified," and "improper." *Fees Award* at *6–7.

The district court therefore reasonably concluded that "Realtime's conduct in forum shopping its dispute supports invocation" of its equitable powers. *Id.* In so finding, the district court compared this case to persuasive authority from the District Court for the District of Columbia. Applying a "bad faith" standard similar to that required in the Ninth Circuit, that court awarded attorneys' fees pursuant to its inherent powers because the plaintiff engaged in similarly "blatant forum-shopping" by refiling the suit in a different forum after it lost and then resisting transfer back to the original court to avoid an adverse result. *Id.* (citing *John Akridge Co. v. Travelers Cos.*, 944 F. Supp. 33, 34 (D.D.C. 1996), *aff'd* Nos. 95-7237, 95-7262, 96-7136, 96-7254, 1997 WL 411654 (D.C. Cir. June 30, 1997)).

The district court also considered and properly rejected Realtime's purported justifications for its near-immediate refiling maneuver. First, the district court correctly found that a then-recent Federal Circuit § 101 decision did not justify Realtime's decision to dismiss the Delaware action and refile in California. *Id.* Second, the district court reasonably found that Realtime's alleged interest in a "speedier decision" was "nonsensical" because it moved the case from a forum where the litigation was underway, and assigned to a judge familiar with related patents, to a court both unfamiliar with the case and "severely understaffed." *Id.* at *7 n.12.

Instead, the facts indicated Realtime only changed course following the adverse patentability decision from the same Delaware judge in parallel actions, an indicator the judge was likely to adopt the magistrate's detailed analysis in this case. *Id.* at *7. The district court found that the timing made it "abundantly clear that Realtime had been holding out for a favorable decision" in the parallel action, but then "realized the writing was on the wall" following that adverse decision. *Id.*

While we agree with Realtime that it is generally permissible under Rule 41(a)(1)(A)(i) for a plaintiff to voluntarily dismiss an action and refile the case in another forum, that is a woefully incomplete description of the circumstances of this case. As described above, Realtime's conduct does not amount to simply refiling; as the district court found, it is a misuse of the ability to refile to wipe the slate clean when the Delaware action was on the eve of issuing a potentially adverse merits ruling, and then select a new forum that clashed with Realtime's prior litigation position.

Accordingly, there is nothing erroneous about the conclusion that Realtime "impermissibly" and "unjustifi[ably]" engaged in forum-shopping in attempt to avoid or delay an adverse ruling. *Id.* at *6–7. The blatant gamesmanship presented by the facts of this case constitutes a willful action for an improper purpose, tantamount to bad faith, and therefore within the bounds of activities sanctionable under a court's inherent power in view of the Ninth Circuit's standard. Identifying no legal error or clearly erroneous fact findings, we hold that the district court did not abuse its discretion in awarding fees pursuant to its inherent equitable powers.

B

Netflix cross-appeals, arguing that the district court erred by declining to award fees in the related Delaware and *inter partes* review proceedings. Just as with a district court's decision to award attorneys' fees, we also review the district court's decision not to award fees for abuse of discretion and nothing obligates the district court to award fees in related actions. *Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1380 n.2 (Fed. Cir. 2020) (declining to reach the question of "whether in the circumstances of this case § 285 *permits* recovery of attorney's fees for parallel USPTO proceedings") (emphasis added); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1369–70

(Fed. Cir. 2013) (finding that the district court did not abuse its discretion in awarding fees for a related ITC action); *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1569 (Fed. Cir. 1988) (recognizing the district court's "broad discretion in calculating the amount of fees" although reversing the trial court's denial of fees for related reissue proceedings because it held that the "entire work product was necessary to the case"). Here, the district court's fact findings support differentiating the related proceedings.

The district court concluded that there was no evidence that the initial filing of the 2017 Delaware action was "untenable." *Fees Award* at *6. At that point in time, none of the adverse rulings had occurred and there was no indication that "Realtime knew or should have known about the weakness of its claims." *Id.* at *6, *9. Although the petitions for *inter partes* review were instituted during the pendency of the Delaware action, the district court found it did not have sufficient evidence to determine whether institution alone "should have served to apprise Realtime of the futility of its litigation efforts." *Id.* at *9. And, Realtime had not yet engaged in its forum-shopping ploy that formed the basis for a fees award in the California actions. *Id.* at *10. Accordingly, the district court declined to award fees for the 2017 Delaware action and the *inter partes* review proceedings Netflix filed in response to that action.

Because we hold that the district court did not abuse its discretion in declining to award attorneys' fees for the related actions, we need not address the hypothetical of whether such an award would be authorized under either § 285 or Federal Rule of Civil Procedure 41. The district court explicitly found that "[e]ven assuming that it is within [its] discretion [to award fees for the related actions], [it] finds that such an award is not warranted here." *Id.* at *10. We affirm the district court's decision on that independent ground.

14          REALTIME ADAPTIVE STREAMING v. NETFLIX, INC.

## CONCLUSION

We have considered parties' remaining arguments and do not find them persuasive.  In view of the foregoing, we affirm the district court's award of attorneys' fees for both California actions and denial of fees for the related Delaware action and *inter partes* review proceedings.

## **AFFIRMED**

### COSTS

No costs.

# United States Court of Appeals
# for the Federal Circuit

---

**REALTIME ADAPTIVE STREAMING LLC,**
*Plaintiff-Appellant*

**v.**

**NETFLIX, INC., NETFLIX STREAMING SERVICES, INC.,**
*Defendants-Cross-Appellants*

---

2021-1484, 2021-1485, 2021-1518, 2021-1519

---

Appeals from the United States District Court for the Central District of California in Nos. 2:19-cv-06359-GW-JC, 2:19-cv-06361-GW-JC, Judge George H. Wu.

---

REYNA, *Circuit Judge*, concurring-in-part and dissenting-in- part.

I concur with the majority's holding that the district court did not abuse its discretion in awarding fees under its inherent powers to sanction.  I dissent in part because I also believe that the district court did not err in determining that two voluntary dismissals without prejudice is sufficient to confer prevailing party status under 35 U.S.C. §285.

It is undisputed that at least some claims were brought in both the Delaware and Central District of California actions.  It is also undisputed that those claims were voluntarily dismissed under Federal Rule of Civil Procedure

41(a)(1)(A)(i) by Appellant in both actions. Pursuant to Rule 41(a)(1)(B), and as a matter of law, the second voluntary dismissal operates as an adjudication on the merits. Such an adjudication undeniably changes the legal relationship of the parties, even if the full scope of any resulting claim preclusion is not determined until a third action is filed.

The case law requiring a judicially sanctioned change in the relationship is in place to contrast situations in which the legal relationship between the parties changes due to circumstances independent of the judicial process, for example, if one party dies, or the parties reach a settlement. Here, the change in the legal relationship is by and through the rules of the court. And, here, the change in the legal relationship, i.e., an adjudication on the merits, is a result of judicial imprimatur. Interpreting our case law to require an affirmative order or act by the court puts form over substance. As such, I would hold that a second voluntary dismissal of the same claims is sufficient to confer prevailing party status on the nonmoving party.