# United States Court of Appeals for the Federal Circuit

---

**MONOLITHIC POWER SYSTEMS, INC.,**
*Plaintiff/Counterclaim Defendant-Appellee,*

AND

**ASUSTEK COMPUTER, INC.,** AND **ASUSTEK COMPUTER INTERNATIONAL AMERICA,**
*Counterclaim Defendants-Appellees,*

**v.**

**O2 MICRO INTERNATIONAL LIMITED,**
*Defendant/Counterclaimant-Appellant.*

---

2012-1221

---

Appeal from the United States District Court for the Northern District of California in No. 08-CV-4567, Judge Claudia Wilken.

---

Decided: August 13, 2013

---

DAN L. BAGATELL, Perkins Coie, LLP, of Phoenix, Arizona, argued for plaintiff/counterclaim defendant-appellee and counterclaim defendants-appellees. With him on the brief were DEAN G. DUNLAVEY, Latham & Watkins, LLP, of Costa Mesa, California, and MARK A. FLAGEL, of Los

Angeles, California, for plaintiff/counterclaim defendant-appellee, Monolithic Power Systems, Inc.

EDWARD R. REINES, Weil, Gotshal & Manges, LLP, of Redwood Shores, California, argued for defendant/counterclaimant-appellant. With him on the brief was TIMOTHY C. SAULSBURY.

––––––––––––––––

Before PROST, MAYER, and REYNA, *Circuit Judges.*

PROST, *Circuit Judge.*

O2 Micro International Ltd. ("O2 Micro") appeals from the decision of the United States District Court for the Northern District of California finding this case exceptional under 35 U.S.C. § 285 and awarding attorney fees and costs to Monolithic Power Systems, Inc. ("MPS"), and ASUSTeK Computer, Inc. and ASUSTeK Computer International (collectively, "ASUSTeK"). *See Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, No. 08-4567, 2011 U.S. Dist. LEXIS 154454 (N.D. Cal. Mar. 3, 2011) ("*Exceptional Case Order*"); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, No. 08-4567, 2012 U.S. Dist. LEXIS 5109 (N.D. Cal. Jan. 17, 2012) ("*Fees and Costs Order*"). We affirm both the exceptional case finding and the attorney fees award.

## BACKGROUND

MPS and O2 Micro are competitors in the market for integrated circuit products that control LCD and LED lighting. Both parties own many patents, a small subset of which is at issue. ASUSTeK, an international hardware and electronics manufacturer, is an MPS customer.

### A. Previous Litigation

For more than a decade, MPS and O2 Micro have been embroiled in litigation. Not counting the suits filed against

MPS customers in other district courts, there have been five lawsuits in which O2 Micro asserted patent infringement claims against MPS in the Northern District of California. This case was the fifth.

In October 2001, O2 Micro filed suit against MPS, alleging infringement of U.S. Patent No. 6,259,615. The district court granted summary judgment of noninfringement in favor of MPS. This decision was affirmed on appeal. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006).

In January 2003, O2 Micro filed an infringement suit against an MPS customer in the Eastern District of Texas, prompting MPS to file suit against O2 Micro in May 2004. MPS sought declarations of noninfringement and invalidity of O2 Micro's U.S. Patent No. 6,396,722 ("'722 patent"). O2 Micro counterclaimed for infringement. Despite O2 Micro's efforts to overcome prior art by attempting to establish an earlier date of conception,[1] a jury found the '722 patent

---

[1] The key piece of prior art MPS used to invalidate O2 Micro's '722 patent was the MP1010 circuit, an MPS product designed in 1998 and used by MPS customers by early 1999. The '722 patent claimed priority to a provisional application filed on July 22, 1999. To establish an earlier invention date, O2 Micro proffered printouts of its own schematics bearing the date stamp, "Feb., 18, 1998," which was in an unusual format with an extra comma between "Feb." and "18." The schematics would serve to corroborate O2 Micro's assertion that inventor-engineer, Dr. Yung-Lin Lin, had conceived of the subject matter claimed in the '722 patent by that date. *See Exceptional Case Order*, at *5. At trial, Dr. Lin and an O2 Micro executive both testified that the February 18, 1998 date was automatically generated on the schematics by a

invalid based on obviousness and the on-sale bar. The verdict was affirmed on appeal. *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 558 F.3d 1341 (Fed. Cir. 2009).

In October 2004, O2 Micro filed a lawsuit against two other MPS customers in the Eastern District of Texas, accusing them of infringing U.S. Patent No. 6,804,129 ("'129 patent"). The case was subsequently transferred to the Northern District of California, and consolidated with MPS's suit filed in May 2004, discussed above. After the transfer, O2 Micro withdrew from the case, covenanting not to sue MPS and its two customers for infringement of the '129 patent.

In July 2005, O2 Micro asserted the '129 patent again in the Eastern District of Texas against a third MPS customer, prompting MPS to file another declaratory judgment action against O2 Micro in May 2007. O2 Micro fought the suit with two motions to dismiss for lack of subject matter jurisdiction, but they were denied. O2 Micro then covenanted not to sue MPS and its customers for infringement of the '129 patent, and stipulated to the dismissal of the suit.

### B. Current Litigation

This brings us to the current litigation. In October 2008, MPS filed a declaratory judgment action against O2 Micro, seeking declarations of noninfringement and invalidity with respect to four related O2 Micro patents: U.S. Patent Nos. 6,856,519, 6,809,938, 6,900,993, and 7,120,035 ("'519 patent family"). Before MPS served the complaint, but after O2 Micro had learned of the lawsuit, O2 Micro had filed a complaint in the International Trade Commission ("ITC"), under § 337 of the Tariff Act of 1930, against MPS and its customers, including ASUSTeK. The § 337 complaint

---

software program used at O2 Micro. *Id.* at *6. This turned out to be false in the case underlying this appeal.

alleged that MPS's and ASUSTeK's imports infringed three of the four patents in the '519 patent family, as well as U.S. Patent No. 7,417,382 ("'382 patent").[2]

Soon thereafter, MPS amended the complaint to include the '382 patent and served O2 Micro. The next day, the ITC notified the parties that it will be instituting an investigation.

In the underlying district court action, O2 Micro counterclaimed for infringement and added additional MPS customers, including ASUSTeK, as counterclaim-defendants. O2 Micro also filed a motion to stay the district court proceedings pending resolution of the ITC investigation. In March 2009, the district court denied the motion in favor of both proceedings moving forward in parallel. To avoid duplication and a waste of resources, the district court ordered that all discovery in the ITC proceeding would apply in the district court action. *Exceptional Case Order*, at *8. All parties assented to this procedure.

---

[2] The '382 patent belongs to the same family as the '722 patent, which was found invalid by a jury in the May 2004 lawsuit between O2 Micro and MPS. Because they were part of the same family, the '382 patent shared the same priority date as the '722 patent, based on the July 22, 1999 filing of a common provisional application. Thus, O2 Micro faced the same hurdles with respect to invalidity in the ITC investigation and the case underlying this appeal as it did in the May 2004 lawsuit. To defend against assertions of invalidity based on prior art, O2 Micro again relied on Dr. Lin's "Feb., 18, 1998" schematics to attempt to establish a conception date before the date the MP1010 circuit had been designed. *See Exceptional Case Order*, at *9.

Several months later, O2 Micro dismissed an MPS customer from the district court suit and withdrew its assertion of the '519 patent family from both the district court and ITC proceedings. In addition, O2 Micro covenanted not to sue MPS or its customers for infringement of the '519 patent family. This left only the '382 patent in the suit from July 2009 forward.

It bears mentioning that throughout both the ITC investigation and the district court proceeding, O2 Micro insisted that the '382 patent is entitled to a February 18, 1998 conception date, as corroborated by the computer-generated date on Dr. Lin's schematics printout. As noted above, as in the May 2004 litigation involving the '722 patent, here the schematics printout was O2 Micro's best hope for overcoming MPS's invalidating art. Thus, O2 Micro filed multiple verified interrogatories attesting to the same. Dr. Lin, the inventor, testified in deposition and at trial in the ITC that he conceived the invention claimed in the '382 patent by February 1998, as reflected by the computer-generated date stamp on the schematics.

However, O2 Micro's story surrounding the schematics unraveled when MPS served the report of its hired schematics expert, Marc Herniter, proving, inter alia, that the date stamp on the schematics had been manually entered. Thereafter, O2 Micro "dissembled" and "sought to mask its proffer of false testimony." *Exceptional Case Order*, at *20. It supplemented its interrogatory responses; it moved to strike Dr. Herniter's report; and it moved for summary adjudication to establish February 18, 1998 as the date of conception of the subject matter claimed by the '382 patent—all in an attempt to put the controversy surrounding the "Feb., 18, 1998" schematics to rest.

In February 2010, the district court ruled on the parties' summary adjudication motions. O2 Micro's motions for summary adjudication concerning the authenticity of sche-

matics and the invention date of the '382 patent were denied. MPS and ASUSTeK's motion for summary adjudication that the earliest invention date for the '382 patent was July 22, 1999 was granted, as was their motion for summary adjudication of lack of willfulness. Finally, MPS and ASUSTeK's motions for summary judgment of invalidity and noninfringement were denied. *Monolithic Power Sys. v. O2 Micro Int'l Ltd.*, No. 08-4567, 2010 U.S. Dist. LEXIS 13106 (N.D. Cal. Feb. 12, 2010). Trial was set for July 2010. *Id.* at *32.

In May 2010, the district court appointed its own technical expert under Federal Rule of Evidence 706 to assist with infringement and invalidity determinations. The court-appointed expert's June 15, 2010 opinion rejected O2 Micro's positions, concluding that all asserted claims of the '382 patent were invalid, and either not infringed or likely not infringed.

Four days later, after MPS and ASUSTeK had filed their pretrial submissions, O2 Micro granted them a covenant not to sue on the '382 patent and moved the district court to dismiss the lawsuit. The district court dismissed all claims with prejudice on June 23, 2010.

On July 1, 2010, MPS and ASUSTeK moved for attorney fees, costs, and sanctions pursuant to 35 U.S.C. § 285, as well as under Federal Rules of Civil Procedure 54(d) and 37(c)(2). The district court granted the request for fees and costs, and based its exceptional case finding on O2 Micro's "vexatious litigation strategy, litigation misconduct and unprofessional behavior." *Exceptional Case Order*, at *21. It found O2 Micro to have employed, "on multiple occasions," a vexatious litigation strategy in which O2 Micro "sued MPS customers, prompting MPS to file declaratory judgment actions." *Id.* at *16. Thereafter, O2 Micro would "covenant[] not to sue, thereby enabling it to avoid litigation on the validity of its patents." *Id.* The district court emphasized

that O2 Micro withdrew and dismissed its claims only after "substantial litigation had taken place," and, in this case, "only after MPS and ASUSTeK completed their filings for the parties' impending final pretrial conference"—causing a waste of substantial resources.

The district court also detailed O2 Micro's litigation misconduct and unprofessional behavior. It recounted the extent to which O2 Micro's various misrepresentations concerning how Dr. Lin's schematics came to be dated "Feb., 18, 1998" affected the proceedings, from discovery through summary judgment. It enumerated at least three "baseless motions" O2 Micro had filed concerning the schematics issue, needlessly prolonging the litigation. *Id.* at *19–20. It explained that instead of "straightforwardly admitting the truth," O2 Micro "dissembled and sought, through motion practice, to mask its proffer of false testimony." *Id.* at *20. Taken together with O2 Micro's vexatious litigation strategy, the district court found that O2 Micro's course of conduct rises to the level of being "exceptional."

Based on these findings, the district court decided that MPS and ASUSTeK were entitled to attorney fees, but reserved its decision on the amount of fees pending further briefing and documentation. *Id.* at *21. The district court reviewed the clerk's taxation of costs, allowing some and disallowing others, and calculated the amount of $339,315 to be taxed against O2 Micro. *Id.* at *22–30. The court also reasoned, over O2 Micro's broad objection, that expenses incurred in the ITC investigation were recoverable even though they did not arise in the district court action. Specifically, O2 Micro had been on notice that discovery taken in the ITC investigation was deemed to apply to this action; indeed, O2 Micro never objected and even used the discovery obtained. O2 Micro also acknowledged the significant overlap of issues and patents between this action and the ITC investigation. And, finally, had O2 Micro not precipi-

tated the ITC investigation, the same discovery-related costs would have been incurred in this litigation. *Id.* at *23–24.

Thereafter, the parties submitted the requested briefing and documentation on attorney fees, nontaxable costs, and expert witness fees. In its briefing objecting to attorney fees and costs, O2 Micro argued that there should be a close nexus between the misconduct found and the fees awarded. O2 Micro also repeated its previous argument that expenses incurred in the ITC investigation should not be recoverable. On January 17, 2012, the district court awarded $663,151 in nontaxable costs against O2 Micro, denied the request for expert witness fees, and further ordered MPS and ASUSTeK to submit a revised calculation of the requested fees in accordance with its discussion of what is and is not allowable. *Fees and Costs Order*, at *11–20. In response to O2 Micro's "nexus" argument, the district court referenced its *Exceptional Case Order* in concluding that O2 Micro's misconduct had been so "pervasive throughout the entire case" that "an award of fees for the entire case is appropriate." *Fees and Costs Order*, at *15. As for O2 Micro's general objection to fees and costs incurred in the ITC investigation, the district court had previously found them to be recoverable given their dual use purpose under the circumstances. *Exceptional Case Order*, at *23–24.

On May 3, 2012, after scrutinizing the parties' last round of submissions, the district court awarded $8,419,429 in attorney fees and entered judgment against O2 Micro. *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, No. 08-4567, 2012 U.S. Dist. LEXIS 62230 (N.D. Cal. May 3, 2012) ("*Final Order on Fees*").

O2 Micro timely appealed from that judgment. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

O2 Micro argues that the district court: (1) applied the wrong standard in declaring this case exceptional under 35 U.S.C. § 285; (2) clearly erred in finding the case to be exceptional; and (3) abused its discretion in awarding attorney fees that were not traceable to or caused by O2 Micro's litigation misconduct. We address each argument in turn.

We review de novo whether the district court applied the correct legal standard under § 285. *Forest Labs., Inc. v. Abbot Labs.*, 339 F.3d 1324, 1328 (Fed. Cir. 2003). We review a district court's factual determinations underlying an exceptional case finding for clear error. *Id.* The decision to award attorney fees, as well as the amount of fees, is reviewed under an abuse of discretion standard. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1186 (Fed. Cir. 1995); *see Beckman Instruments, Inc. v. LBK Produkter AB*, 892 F.2d 1547, 1553 (Fed. Cir. 1989) ("The determination of the amount of the award remains within the discretion of the trial court, since it is the trial judge who is in the best position to know how severely [a party's] misconduct has affected the litigation.").

A. Exceptional Case Standard

O2 Micro asserts that the district court applied the wrong legal standard in declaring the case exceptional. It faults the district court for failing to make findings concerning O2 Micro's "bad faith" in bringing an "objectively baseless" litigation, which it argues is required by *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993). Citing *Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.*, O2 Micro contends that sanctions under § 285 may be imposed only when there is evidence that the losing party brought the objectively baseless litigation in bad faith. 393 F.3d 1378, 1381 (Fed. Cir. 2005).

We have observed that, as a general matter, many forms of misconduct can support a district court's exceptional case finding, including inequitable conduct before the U.S. Patent and Trademark Office ("PTO"); litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit; or willful infringement. *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001) (citing *Hoffmann-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1365 (Fed. Cir. 2000)). And, as we made clear in *Rambus Inc. v. Infineon Technologies AG*, "[l]itigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285." 318 F.3d 1081, 1106 (Fed. Cir. 2004). Indeed, it is only absent litigation misconduct or misconduct in securing the patent that we require the finding of both "bad faith" and "objectively baseless" litigation to warrant sanctions under § 285. *Brooks Furniture*, 393 F.3d at 1381. In other words, litigation misconduct alone may suffice to make a case exceptional.

In its opinion, the district court cited *Brooks Furniture* for the exceptional case standard: "A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as . . . misconduct during litigation, vexatious or unjustified litigation, conduct that violates FED. R. CIV. P. 11, or like infractions." *Exceptional Case Order*, at *15. Moreover, before discussing the various instances of O2 Micro's misconduct, the district court also cited *Taltech Ltd. v. Esquel Enterprises Ltd.*, 604 F.3d 1324, 1329 (Fed. Cir. 2010), to clarify that "[l]itigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice to make a case exceptional." *Exceptional Case Order*, at *18.

Thus, O2 Micro is incorrect in suggesting that findings of "bad faith" and "objectively baseless" litigation are always required in addition to a "litigation misconduct" finding for

an exceptional case. The district court applied the correct standard. It also correctly explained that, having found O2 Micro's litigation misconduct sufficient to render the case exceptional, it need not also consider whether O2 Micro committed inequitable acts before the PTO or filed an objectively baseless litigation.

## B. Exceptional Case Finding

O2 Micro also argues that the district court clearly erred in making the exceptional case determination because both of its findings—"vexatious litigation strategy" and "litigation misconduct"—are unsupported in fact. O2 Micro asserts that its defeat of summary judgment of noninfringement constitutes evidence sufficient to overcome any argument that its assertion of infringement was objectively baseless or made in bad faith. It also maintains that its "good faith mistake about how the schematics came to be dated," Appellant's Br. 33–34, its "prompt acknowledgement of its mistake," and the "corrective measures" it took upon making that discovery, *id.* at 38, do not amount to litigation misconduct. In the interest of streamlining the case with respect to establishing the invention date of the '382 patent, O2 Micro argues that it had reasonable bases for filing summary adjudication motions and an evidentiary motion to strike. Finally, O2 Micro disputes that its litigation strategy was vexatious or that the purpose of its lawsuit was improper.

O2 Micro's arguments are meritless. First, O2 Micro fails to appreciate the "well-established [rule] that litigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012) (internal quotation marks omitted). Instead, O2 Micro's arguments challenging the exceptional case determination hinge on its mistaken conviction that there must be an additional "bad faith" component to litigation misconduct or that vexatiousness may be found only

when coupled with the assertion of "objectively baseless" positions. Additional components are simply not required for an exceptional case finding based on litigation misconduct.

Second, the district court's findings of an overall vexatious litigation strategy and numerous instances of litigation misconduct are sufficient to support an exceptional case determination. The record provides ample grounds for the district court to find that O2 Micro had undertaken a vexatious litigation strategy. Having presided over a decade of litigation between O2 Micro and MPS, the district court witnessed several instances in which O2 Micro sued MPS customers in order to prompt MPS to file declaratory judgment actions with the court. In each previous case, O2 Micro withdrew its claims and granted covenants not to sue after substantial litigation had taken place. In the underlying case, O2 Micro employed its modus operandi, this time moving to dismiss only after MPS and ASUSTeK had completed their filings for the final pretrial conference, wasting the parties' and the court's resources. The district court, with its unparalleled familiarity with and insight into O2 Micro's motivations and repeated resort to these tactics, assessed that this pattern amounted to a vexatious litigation strategy that would support a finding of exceptional case. We decline to disturb that assessment.

Similarly, the district court's recount of the series of "litigation misconduct and unprofessional behavior" by O2 Micro is well-grounded and supports the finding of an exceptional case. O2 Micro repeatedly misrepresented that the date of the schematics was computer-generated and not manually entered, having three witnesses testifying to the same. O2 Micro failed to conduct an investigation into the veracity of its representations until after MPS had retained a schematics expert to debunk its version of events. After the exposure, O2 Micro supplemented its verified interroga-

tory regarding the date of the schematics with a "convoluted paragraph in which it obfuscated the fact that Lin had entered the date." *Exceptional Case Order*, at \*19. Thereafter, O2 Micro filed three "baseless motions"—a motion to strike MPS's expert report and expert testimony on the schematics and two motions for summary adjudication to foreclose further litigation as to the authenticity of the schematics and the conception date of the subject matter claimed in the '382 patent—to bury the past. As the district court found, "[r]ather than straightforwardly admit the truth, O2 Micro dissembled and sought, through motion practice, to mask its proffer of false testimony." *Id.* at \*20. Considering the totality of the circumstances, the district court then concluded that this series of misconduct, along with O2 Micro's overall vexatious litigation strategy, warranted designating the case exceptional. *See Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1347 (Fed. Cir. 2000) ("In assessing whether a case qualifies as exceptional, the district court must look at the totality of the circumstances.").

Having reviewed the district court's findings as well as the record on appeal, we are well satisfied with the district court's conclusion that misconduct and unprofessional behavior occurred. We are certainly not left with the conviction that the district court committed clear error in finding the case exceptional. In any event, it "ill behooves an appellate court to overrule a trial judge concerning litigation misconduct when the litigation occurred in front of the trial judge, not the appellate court." *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1359 (Fed. Cir. 2008).

## C. Attorney Fees Award

As noted above, the bulk of the $8,419,429 attorney fees award was for discovery-related expenses incurred in the ITC investigation. The district court allowed recovery for these expenses based on the parties' agreement to take

discovery for "dual use" in the parallel ITC and district court proceedings. *See Exceptional Case Order*, at *23–24.

O2 Micro argues that it was an abuse of discretion for the district court to award fees that are not traceable solely to O2 Micro's "exceptional" behavior in the litigation. O2 Micro relies on *Fox v. Vice*, 131 S. Ct. 2205 (2011), to support its contention that an award of attorney fees must be limited to those fees that would not have been incurred "but for" its acts of misconduct. *See id.* at 2215. Although O2 Micro concedes that discovery taken in the ITC proceeding was used by the parties in the district court case, it argues that these fees do not satisfy the "but for" test because they would have been incurred even if the district court case had not been filed.

According to O2 Micro, the ITC-related fees[3] are especially problematic because, unlike district courts, the ITC imposes no limits on discovery. O2 Micro also relies on *Highmark, Inc. v. Allcare Health Management Systems* for its position that where there is a fee award based on litigation misconduct, the amount should be that which is necessary to compensate a party for the "extra legal effort to counteract" the misconduct. 687 F.3d 1300, 1316 (Fed. Cir. 2012). O2 Micro explains that because the district court had not found its actions in the ITC investigation to constitute misconduct, fees incurred in investigation should not be part of the award.

---

[3] To clarify, the fee award does not include fees for work related solely to the ITC proceeding, such as expenses incurred in connection with efforts to prove the existence of a domestic industry. The only ITC-related fees that were awarded were for expenses relating to discovery, which the parties agreed would be taken for "dual use" in both the ITC and the district court proceedings.

MPS and ASUSTeK contend that O2 Micro has waived the "but for" argument on appeal by failing to raise it below. The appellees acknowledge that O2 Micro objected to the recovery of any fees related to the ITC investigation in the proceedings below, but assert that the objection did not encompass its current "but for" theory. MPS and ASUSTeK also argue that even if O2 Micro's "but for" argument is not waived, *Fox* is inapposite to this case because its application is limited to civil rights suits, brought under 42 U.S.C. § 1988(b), that involve both frivolous and nonfrivolous claims. Lastly, MPS and ASUSTeK assert that the district court's finding that O2 Micro's misconduct was "pervasive throughout the entire case" justified its discretionary award of fees for the entire case.

At the outset, we find that O2 Micro has not waived its "but for" argument. O2 Micro had previously urged the same argument in its papers filed in opposition to the motion for fees. Moreover, O2 Micro had submitted the *Fox* opinion to the district court in a notice of supplemental authority that was filed after the attorney fees briefing was complete but before the district court ruled on the matter. Indeed, the district court, in the *Fees and Costs Order*, addressed—and rejected—O2 Micro's "but for" argument, at *13–15, and had found *Fox* to be inapplicable to a case that did not contain a frivolous claim, at *15 n.4. We would be hard pressed to find a waiver in these circumstances.

On the merits, we find that *Fox* is not applicable to this case. The issue in *Fox* was the allocation of fees between frivolous and nonfrivolous claims in a single lawsuit. *See Fox*, 131 S. Ct. at 2211. In contrast, the situation here concerns the allocation of fees incurred in separate, but parallel, proceedings—neither of which involved a frivolous claim. O2 Micro is, however, correct to point out the observation in *Highmark* that an exceptional case finding based on litigation misconduct "usually does not support a full

award of attorney's fees." *Highmark*, 687 F.3d at 1316 (citing *Beckman Instruments*, 892 F.2d at 1553). Instead, a fee award "must bear some relation to the extent of the misconduct, and compensate a party for the extra legal effort to counteract the misconduct." *Id.* (citations omitted) (internal quotation marks omitted).

However, as evident in the district court's *Exceptional Case Order* and in the record before us, this case was anything but usual and the extent of O2 Micro's misconduct was anything but limited. Indeed, the litigation misconduct finding by the district court was not of isolated instances of unprofessional behavior by O2 Micro. Rather, O2 Micro's extensive misconduct was enough to comprise an abusive "pattern" or a vexatious "strategy" that was "pervasive" enough to infect the entire litigation. *Exceptional Case Order*, at *16–21; *Fees and Costs Order*, at *15. The district court found that O2 Micro's "exceptional" conduct began before it was even served with MPS's complaint, when it filed a complaint in the ITC against MPS and MPS's customers in retaliation for the declaratory judgment action MPS had filed against it. O2 Micro's antics surrounding the date of the schematics also took on many forms throughout the litigation, affecting several rounds of written discovery, deposition testimony, and baseless motions including at the summary judgment stage. Finally, O2 Micro employed its usual tactic of granting covenants not to sue only after substantial work had been completed in this case.

Based on the examples of unprofessional behavior provided by the district court and the many more instances of it we were able to glean from the record, we agree with the district court that O2 Micro's rampant misconduct so severely affected every stage of the litigation that a full award of attorney fees was proper here. Under the unique circumstances, the district court's award of ITC-related expenses is also not an abuse of discretion, especially in view of the

discovery's application in the district court and the parties' agreement to its dual use.

Further, we note that the district court clarified that the award discounted by ten percent all attorney fees incurred and included only twenty-five percent of the requested fees from block-billed time entries, resulting in a significant reduction in the amount. *Final Order on Fees*, at *3–4. This demonstrates to us a careful exercise of discretion by the district court, and not an abuse of it.

More than a decade ago, the *Beckman Instruments* court foretold, "we can certainly imagine a case in which litigation misconduct would justify an award of attorney fees for the entire litigation." *Beckman Instruments*, 892 F.2d at 1553. We are quite confident that this was the kind of case it had in mind.

CONCLUSION

O2 Micro has not persuaded us that the district court's exceptional case finding was clearly erroneous. We also detect no abuse of discretion by the district court in awarding attorney fees. Accordingly, the judgment of the district court is affirmed.

**AFFIRMED**