**NXP B.V., Plaintiff**

**v.**

**BLACKBERRY, LTD., et al., Defendants.**

**No. 6:12–cv–00498–YK.**

United States District Court, M.D. Florida, Orlando Division.

Signed Oct. 21, 2014.

*Sears, Roebuck & Co.,* 192 F.Supp.2d 1371, 1374 (S.D.Fla.2002).

Aaron R. Hand, Denise M. De Mory, Bunsow, De Mory, Smith & Allison, LLP, Redwood City, CA, Brian A.E. Smith, Cliff Win, Henry C. Bunsow, Matthew F. Greinert, Bunsow, De Mory, Smith & Allison, LLP, San Francisco, CA, Taylor Flanagan Ford, Thomas A. Zehnder, King, Blackwell, Zehnder & Wermuth, P.A., Orlando, FL, for Plaintiff.

Brian P. Boyd, Christopher O. Green, Noah C. Graubart, Fish & Richardson, PC, Atlanta, GA, Brian C. Riopelle, McGuireWoods, LLP, Richmond, VA, Charles Talley Wells, Sr., Richard E. Mitchell, Robert M. Norway, GrayRobinson, PA, Orlando, FL, Hasan Rashid, Sarah C. Columbia, McDermott, Will & Emery, LLP, Boston, MA, Jeffrey R. Gargano, Rita J. Yoon, McDermott, Will & Emery, LLP, Chicago, IL, Jon Dean, Julian Andre, Russell Hayman, Tala K. Toufanian, Vanessa Lefort, McDermott Will & Emery, LLP, Los Angeles, CA, Marcos Daniel Jimenez, McDermott, Will & Emery, LLP, Miami, FL, Rex Mann, Robert C. Earle, Thomas M. Melsheimer, Thomas H. Reger, II, Fish & Richardson, PC, Dallas, TX, Thomas B. Manuel, Fish & Richardson, PC, Redwood City, CA, for Defendants.

## *MEMORANDUM*

YVETTE KANE, District Judge.

Defendants BlackBerry Limited and BlackBerry Corporation (Defendants or "BlackBerry") move the Court to declare the above-captioned action "exceptional" and order an award of attorneys' fees pursuant to 35 U.S.C. § 285. (Doc. No. 527.) Plaintiff NXP B.V. (Plaintiff or "NXP") opposes the motion. For the reasons that follow, the Court will deny Defendants' motion.

## I. BACKGROUND

On April 12, 2012, NXP filed a complaint in this Court, alleging that BlackBerry had infringed six of their U.S. patents. (Doc. No. 1.) After receiving Defendants' invalidity contentions, Plaintiff conceded its claim pertaining to U.S. Patent No. 5,763,955 ("'955 patent"). Plaintiff subsequently submitted an amended complaint, reducing its asserted patents to five ("patents-in-suit"): No. 6,501,420 ("'420 patent"), No. 6,434,654 ("'654 patent"), No. 7,330,455 ("'455 patent"), No. 5,597, 668 ("'668 patent"), and No. 5,639,697 ("'697 patent"). (Doc. No. 97.) NXP is a semiconductor manufacturer that was formerly a division of Philips Electronics. BlackBerry is a telecommunications and wireless equip-

ment company that manufactures smartphones and tablets, among other business activities. The patents-in-suit relate to mobile GPS receivers, communications standards for Wi–Fi networks, and semiconductor design and manufacturing methods.

Discovery proceeded on the patents-in-suit. Following a claim construction hearing, the Court entered a claim construction order on January 16, 2014. (Doc. No. 307.) In light of the Court's claim construction order, Plaintiff conceded its claims regarding the '668 patent and the '697 patent. On March 20, 2014, the Court issued an order denying the parties' cross-motions for summary judgment, excepting the claims that Plaintiff had conceded following claim construction. (Doc. No. 394.) The case proceeded to trial on Plaintiff's claims regarding the '420 patent, the '654 patent, and the '455 patent.

The '420 patent discloses a mobile cellular telephone including a GPS receiver that is arranged to power up in response to a user entering certain digits, such as an emergency call telephone number, or in response to a user navigating to a particular website. (Doc. No. 307 at 16.) This latter embodiment, represented by Claim 3 of the patent, was the subject of the parties' dispute and the only claim that Plaintiff asserted. Claim 3 teaches "[a]n internet enabled, mobile cellular telephone comprising a communications transmitter and receiver arranged for two-way communication with a base station, and a GPS receiver, wherein the GPS receiver is arranged to power up in response to a user selecting a particular website." (*Id.*)

Plaintiff asserted that Defendants' products literally infringe Claim 3 of the '420 patent. (Doc. No. 334 at 9.) Defendants'

position throughout this litigation has been that their products do not infringe Claim 3 of the '420 patent, either literally or under the doctrine of equivalents, and that Claim 3 is invalid because it fails to comply with the written description requirement of 35 U.S.C. § 112. (Doc. No. 332 at 14–16.)[1]

The written description requirement mandates that a claimed invention contain "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any persons skilled in the art for which it pertains ... to make and use the same." 35 U.S.C. § 112(a). Defendants have argued that Claim 3 is devoid of any description of an "internet enabled phone," and the remainder of the patent specification fails to reasonably convey that the inventors possessed an invention of an "Internet enabled" phone that works with "websites." (Doc. No. 309 at 18, 22–23.) Plaintiff's position has been that Claim 3 complies with the written description requirement under Section 112 (Doc. No. 334 at 20–21), and that, as noted above, Defendants' products infringe Claim 3 of the '420 patent.

The '654 patent discloses a type of data bus, which is a piece of computer hardware connecting a "host," such as the processor, to a "companion," such as a memory component, and conveys information between the host and companion. (Doc. No. 394 at 17.) Claim 1 of the '654 patent, which was the subject of the parties' dispute in this litigation, requires a "variable width data bus coupled to said host interface and said companion interface for transmitting serialized data blocks between said host interface and said companion interface." (*Id.*)

---

1. Defendants have also argued that the '420 patent is invalid on the grounds of prior art and obviousness. (*Id.* at 17.)

Plaintiff alleged that Defendants' products infringe the '654 patent under the doctrine of equivalents, and that Defendants' products indirectly infringe the '654 patent by inducement. (Doc. No. 394 at 18.) Defendants' position has been that its products do not infringe Claim 1 of the '654 patent under the doctrine of equivalents, arguing that its products do not transmit "serialized data blocks" over the same "variable width data bus," as the '654 patent requires. (Doc. No. 309 at 19.) Moreover, Defendants argued that Plaintiff could not establish induced infringement without proving that a BlackBerry user directly infringed the '654 patent; accordingly, as Defendants maintained that BlackBerry does not directly infringe the patent through transmission of "serialized data blocks," then BlackBerry customers could not directly infringe the patent either. (Doc. No. 332 at 22.) Finally, Defendants have argued that Claim 1 is invalid on the grounds of anticipation and/or obviousness. (*Id.* at 23.)

The '455 patent teaches a method and communication device to facilitate communication between newer Wi-Fi devices and their older counterparts; specifically, "increasing data transmission rates between communication units which may be operating in diverse modes." (Doc. No. 307 at 5.) Claim 13 discloses "[a] communication device for data transmission in wireless networks, the communication device configured to connect as a first communicant to a second communicant via electromagnetic signal paths, comprising: at least one transmitting unit ... wherein the first data transmission rule defines a permissible value range for the element identification part; an implementation in addition to the first data transmission rule of a second data transmission rule which expands the permissible value range of the element identification part...." (Doc. No. 334 at 13–14.) Claims 14–17 of the '455 patent

disclose further aspects of the communication device described in Claim 13. (*Id.* at 14.)

Plaintiff alleged that Defendants' products literally infringe Claims 13–17 of the '455 patent. (Doc. No. 334 at 15.) Defendants' position throughout this litigation has been that their products do not infringe Claims 13–17 of the '455 patent. (Doc. No. 332 at 10–11.) Defendants have argued that given the Court's construction of the phrase "permissible value range" as "the set of values that are implemented in a version of the standard," Defendants' products cannot infringe the asserted claims requiring that "the first data transmission rule defines a permissible value range for the element identification part," since Plaintiff maintains that the "permissible value range is 1," and "1" is not a "set of values." (*Id.*) Moreover, Defendants have argued that all asserted claims require that there be a "first" and "second" data transmission rule, which do not exist in the BlackBerry devices. (*Id.* at 11.) Further, Defendants have argued that Claims 13–17 are invalid on the grounds of anticipation and/or obviousness. (*Id.* at 11–12.)

On April 7, 2014, at the conclusion of a two-week trial, a jury returned a verdict in favor of Defendants, finding that the asserted claims of the '420 patent, the '654 patent, and the '455 patent were not infringed. The jury also returned a verdict of invalidity on Claim 3 of the '420 patent, Claim 1 of the '654 patent, and on Claims 13, 14, 15, 16, and 17 of the '455 patent. (Doc. No. 484.) The Clerk of Court entered judgment in favor of Defendants on April 10, 2014. (Doc. No. 491.) On May 8, 2014, Plaintiff filed a motion for a new trial, and renewed its pre-verdict motion for judgment as a matter of law on the '455 patent. (Doc. No. 518.) On May 14, 2014, Defendants moved to declare this

action an exceptional case and award attorneys' fees pursuant to 35 U.S.C. § 285. (Doc. No. 527.) On September 22, 2014, the Court entered an order denying Plaintiff's motion for a new trial and renewed motion for judgment as a matter of law on the '455 patent. (Doc. No. 561.) Defendants' motion to declare this action an exceptional case and award attorneys' fees pursuant to 35 U.S.C. § 285 is fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW

Section 285 grants the district court discretion to award reasonable attorney fees in patent infringement cases to the prevailing party in "exceptional cases." The text of section 285 is clear and "imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional cases.'" *Octane Fitness, LLC v. Icon Health & Fitness, Inc.,* —— U.S. ——, 134 S.Ct. 1749, 1755–56, 188 L.Ed.2d 816 (2014).

Prior to the Supreme Court's decision earlier this year in *Octane,* the Federal Circuit limited fee-shifting in patent cases to those in which the prevailing party demonstrated, by clear and convincing evidence, either (1) litigation misconduct; or (2) that the litigation was both objectively baseless and brought in subjective bad faith. *Brooks Furniture Mfg., Inc. v. Dutailier, Int'l, Inc.,* 393 F.3d 1378, 1381–82 (Fed.Cir.2005). The Federal Circuit defined the first scenario as occurring only "when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed.R.Civ.P. 11, or like infractions." *Id.* at 1381. Absent this type of misconduct, fees could be imposed only if "both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Id.* The Federal Circuit subsequently clarified that litigation is objectively baseless only if it is "so unreasonable that no reasonable litigant could believe it would succeed," *iLOR, LLC v. Google, Inc.,* 631 F.3d 1372, 1378 (2011), and that litigation is brought in subjective bad faith only if the plaintiff "actually know[s]" that it is objectively baseless. *Id.* at 1377; *see Octane,* 134 S.Ct. at 1754.

In *Octane* the Supreme Court rejected this "rigid and mechanical formulation." *Octane,* 134 S.Ct. at 1754. With regard to litigation misconduct, the Court diverged from the Federal Circuit's focus on sanctionable conduct, holding that "a district court may award fees in the rare case in which a party's unreasonable conduct— while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane,* 134 S.Ct. at 1757. Further, the Court clarified that a district court need not find that the litigation was both objectively baseless and brought in subject bad faith to award fees. "[A] case presenting *either* subjective bad faith *or* exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* (emphasis added).

The Court in *Octane* construed the term "exceptional" in accordance with its ordinary meaning of "uncommon," "rare," or "not ordinary," and held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane,* 134 S.Ct. at 1756. District courts are to exercise their discretion under Section 285 on a case by case basis, consider-

ing the totality of the circumstances and applying a preponderance of the evidence standard. *Id.* at 1756, 1758.

In exercising their discretion, the Court suggested that district courts look to "non-exclusive" factors it previously set forth regarding a similar provision of the Copyright Act, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane,* 134 S.Ct. at 1756 n. 6 (quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)). The Court observed that a district court is well-equipped to decide whether a case is exceptional because it "lives with the case over a prolonged period of time." *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.,* ── U.S. ──, 134 S.Ct. 1744, 1748, 188 L.Ed.2d 829 (2014). A trial court's finding of an exceptional case is reviewed for abuse of discretion. *Id.* at 1749.

## III.  DISCUSSION [2]

██ Defendants assert that this case meets Section 285's "exceptional" bar, and it is entitled to an award of attorneys' fees. (Doc. No. 527 at 8.) Plaintiff objects, asserting that "[t]hroughout this litigation, BlackBerry behaved like a defendant who knew this case would reach a resolution on

the merits," and therefore, this case is quite ordinary: "a defense verdict in a tightly contested patent case in which the parties engaged in a hard-fought battle." (Doc. No. 547 at 9.)

### A.  Substantive Strength of NXP's Litigating Position

Defendants' first group of arguments appear to center on their position that NXP's claims were so meritless that pursuit of them in this case was unreasonable, and that accordingly, the Court should find this case "exceptional" under the first part of the Supreme Court's reformulated standard. *See Octane,* 134 S.Ct. at 1756 ("an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case). . . .").

#### 1.  Dropping Claims to Three of Six Patents Prior to Trial

Defendants first point to Plaintiff's dropping of its claims to three of the six patents prior to trial as support for their position regarding the meritlessness of Plaintiff's claims. Defendants cite *Monolithic Power Sys., Inc. v. O2 Micro, Int'l, Ltd.,* 726 F.3d 1359 (Fed.Cir.2013) ("*Monolithic*"), as support for their argument that the "pattern of asserting patents only later to drop the allegations before trial 'warrants designating the case exception-

---

**2.** Plaintiff argues that this Court should find that Defendants waived their right to request attorneys' fees under § 285 by not including the fee request in their pretrial statement, citing Middle District of Florida precedent, which it maintains controls this "procedural" issue. Defendants note that they included the request for declaration of an exceptional case in their Answers to the Original and Amended Complaints, and have therefore met their requirement to preserve the issue under Federal Circuit precedent, which they maintain controls this issue, citing *Sulzer Textil AG v. Picanol NV,* 358 F.3d 1356 (Fed.Cir.2004). In

*Sulzer,* the Federal Circuit clarified that a party's failure to include a § 285 request for attorneys' fees in a pretrial order does not result in waiver of the issue, as "[a]t the pretrial stage, there is no prevailing party and thus, any claim for attorneys' fees would be premature." *Id.* at 1369. The Court is persuaded by Defendants' argument, and finds that Defendants have not waived their request for declaration of an exceptional case and award of attorneys' fees under § 285. Accordingly, the Court will address the substance of Defendants' motion.

al.'" (Doc. No. 527 at 10.) However, a review of that case demonstrates that it presented a starkly different litigating strategy than the one pursued by Plaintiff in this case. In that case, there was ample evidence that O2 Micro had repeatedly pursued a vexatious litigation strategy in multiple suits between the parties over many years. *Monolithic,* 726 F.3d at 1367. The court described witnessing several instances where O2 Micro sued Monolithic's customers in order to prompt Monolithic to file declaratory judgment actions with the court, and that in each case, O2 Micro subsequently withdrew its claims and granted covenants not to sue after substantial litigation had taken place. *Id.* The court found that O2 Micro had engaged in similar behavior in the case before the court, moving to dismiss claims shortly before the final pretrial conference and "wasting the parties' and court's resources." *Id.*

However, here there is no basis to conclude that Plaintiff engaged in a "kitchen sink" approach without a good faith basis for bringing suit. The record in this case supports Plaintiff's position that it dropped pursuit of its claims on the '955 patent after it received Defendants' invalidity contentions on October 31, 2012, at which point Defendants agreed to bear their own fees and costs.[3] One of the purposes of discovery—including the exchange of infringement and invalidity contentions—is "to allow the plaintiff to pin down the defendant's theories of defense, thus confining discovery and trial preparation to information that is pertinent to the theories of the case." *O2 Micro Intern. Ltd. v.*

*Monolithic Power Sys., Inc.,* 467 F.3d 1355, 1365 (Fed.Cir.2006). Plaintiff's withdrawal of the '955 patent during the course of discovery, and prior to filing its amended complaint, was not unreasonable, and does not weigh in favor of an "exceptional" case finding.

Similarly, the Court does not regard Plaintiff's withdrawal of its claims on the '668 and '697 patents after receipt of the Court's claim construction order as unreasonable. A party is free to alter its litigation strategy after receiving an unfavorable claim construction. *See Abbott Point of Care, Inc. v. Epocal, Inc.,* 908 F.Supp.2d 1231, 1240 (N.D.Ala.2012) (citing *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC,* 445 F.3d 1348, 1353 (Fed.Cir.2006)). In fact, as Plaintiff points out, its choice to drop these two patents, rather than pursuing them to verdict and then appealing the claim construction order, actually weighs in favor of a finding of reasonableness. *See* Doc. No. 547 at 22 n. 70 (citing Order Denying Defendants' Motion for Attorneys' Fees and Costs, *Kaneka Corp. v. Zheijiang Medicine Co., Ltd.,* 11–cv–2389 (C.D.Cal. May 23, 2014), Doc. No. 351 at 8 ("An adverse claim construction issued apart from a case-dispositive motion would therefore put future plaintiffs at the mercy of defendants—plaintiffs would be unable to pursue a case-dispositive order and therefore a suitable record for appeal without risking an award of attorney fees.")). Moreover, Plaintiff's failure to depose Defendants' technical expert on the '668 and '697 patents likewise does not weigh in favor of a finding of unreasonableness in Plaintiff's litigating position with respect to

---

3. Defendants point out in their motion that they are not seeking to recover fees related to the '955, '668 or '697 patents, as they entered into stipulations of dismissal with regard to those patents requiring each party to bear its own costs and fees. Rather, they point to Plaintiff's handling of the '955, '668 and '697 patents in an effort to demonstrate an overall litigation strategy of asserting meritless patents and exposing Defendants to the expense of patent litigation notwithstanding the absence of support for Plaintiff's positions. (Doc. No. 527 at 10 n. 3.)

these patents, as Plaintiff sought relatively small damages on these two patents. (Doc. No. 547 at 23.)

### 2. Plaintiff's Pursuit of the '420 Patent to Trial

Defendants next argue that Plaintiff's claims regarding the '420 patent were so meritless as to render its pursuit of the '420 patent to trial objectively unreasonable. Defendants first point to what they see as weak evidence supporting Plaintiff's fulfillment of the written description requirement of Section 112. However, compliance with the written description requirement is a question of fact, *see Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1285 (Fed.Cir.2012), and Plaintiff presented competent evidence on this question of fact to the jury. The fact that the jury may not have found Plaintiff's evidence persuasive in reaching its verdict of invalidity does not weigh in favor of a finding that it was unreasonable for Plaintiff to do so.

Defendants also assert that because Plaintiff offered the testimony of Plaintiff's technical expert, Dr. Alpert, and the co-inventors of the '420 patent that was inconsistent with the testimony of Plaintiff's damages expert, Plaintiff improperly advanced its claim for damages. (Doc. No. 527 at 13.) Specifically, Defendants assert that while Mr. Weinstein testified that the benefit of Claim 3 of the '420 patent would result in cost savings on mobile phone batteries, Dr. Alpert and the co-inventors conceded that the invention wasted battery power. (*Id.*)Defendants previously raised this argument to the Court in support of their *Daubert* motion, and the Court rejected it. (Doc. No. 392 at 8.) Plaintiff submits that although the witnesses conceded that Claim 3 wastes power on occasion, they testified that "overall battery life is still improved by implementing the '420 inventions because the GPS chip is not always on." (Doc. No. 547 at 25; *see, e.g.*, Doc. No. 427 at 85:9–18, Doc. No. 439 at 38:25, 39:1–3 ("And if in those events when the location is not needed, it wastes power, correct? Yes.").) In the same vein, Defendants also argue that the "two use cases accused by NXP of infringing the '420 patent were facially ridiculous," and Defendants were forced to bring two witnesses to trial in order to dispute Plaintiff's "patently absurd" use scenarios. (Doc. No. 527 at 13–14.) The Court finds nothing exceptional in Plaintiff's use theories, which it supported with expert testimony (*see* Doc. No. 439 at 35:16–23), or the fact that Defendants flew witnesses from Canada in an effort to disprove Plaintiff's theories at trial.

Defendants' final argument concerning the '420 patent is that Dr. Alpert presented testimony "directly at odds with the Court's claim construction order," and his testimony reflects "a stark disconnect between the claim language and the accused products." (Doc. No. 527 at 15.) Plaintiff disagrees, arguing that the Court construed the term "website," as having its plain and ordinary meaning, and Dr. Alpert testified that when a user selects an application, the user is selecting a "website." (Doc. No. 547 at 26.) The Court construed the term "website" according to its plain and customary meaning, rejecting Plaintiff's proposed construction of the term, which was "resource available through the world wide web." (Doc. No. 307 at 19–20.) The Court did not construe the meaning of "selecting a website." During trial, Dr. Alpert testified that the claim limitation of user "selecting a particular website" is met by "going out and acquiring the information that they seek from the worldwide web." (Doc. No. 471 at 132:11–18.) Although Defendants complain that this testimony demonstrates that Dr. Alpert "reverted back to the re-

jected pre-claim construction position," (Doc. No. 527 at 15), the transcript reveals that Defendants did not object at the time that his testimony was inconsistent with claim construction. (*See* Doc. No. 471 at 132:11–18.)

In connection with their argument regarding Dr. Alpert's testimony, Defendants also argue that Plaintiff failed to present "particularized testimony establishing equivalents in its case-in-chief." (Doc. No. 527 at 15.) However, Plaintiff presented testimony on its doctrine of equivalents claim on the '420 patent (*see* Doc. No. 436 at 57:19–25, 58:1–12), and therefore, the Court cannot find, as Defendants urge, that Plaintiff "continue[d] litigating baseless claims well past the point it was apparent those claims would not succeed." (Doc. No. 527 at 15.) To the contrary, Plaintiff supported its doctrine of equivalents claim with expert testimony, and the jury rejected it. Accordingly, for the foregoing reasons, the Court declines to find that Plaintiff's pursuit of the '420 patent to trial was objectively unreasonable and supportive of a finding of exceptionality.

### 3. Plaintiff's Pursuit of the '654 Patent to Trial

Defendants argue that Plaintiff should have been aware following the Court's order on claim construction that none of the accused devices could infringe the '654 patent, either literally or under the doctrine of equivalents, and its failure to drop the '654 patent was unreasonable. (Doc. No. 527 at 21.) Plaintiff objects, relying primarily on the fact that the Court previously denied Defendants' motion for judgment as a matter of law and motion for summary judgment on this ground. (Doc. No. 547 at 29.)

Defendants' first argument relates to Plaintiff's previously-filed motion for leave to amend its pretrial statement to include its literal infringement allegations on the '654 patent, which the Court denied. (Doc. No. 527 at 21, Doc. No. 408.) Defendants argue that the incident is "emblematic" of the burdens that Plaintiff "needlessly inflicted on BlackBerry in having to oppose ever-shifting theories." (Doc. No. 527 at 21–22.) The Court agrees that Plaintiff's motion for leave to amend the pretrial statement may have inconvenienced the parties, but does not agree that it merits finding the case exceptional and ordering an award of attorneys' fees. Neither does the Court find Defendants' argument that Plaintiff failed to present evidence on Claims 2, 3, 4, and 5 of the '654 patent in its case-in-chief, and thereafter agreed to withdraw its allegations on these claims, supports a finding that Plaintiff's conduct was unreasonable. This reflects a strategic choice by Plaintiff, and the Court does not find it exceptional.

Defendants next argue that Plaintiff "offered no evidence of equivalents that aligned with the intrinsic teachings of the '654 patent." (Doc. No. 527 at 23.) Although Defendants acknowledge that Dr. Alpert testified that the accused products "performed substantially the same function, in the same way, with the same result as claim 1 in the '654 patent," Defendants argue that his "conclusory" testimony cannot be reconciled with the written description requirement and Claim 1 of the '654 patent, which distinguished between a variable width and a fixed width bus. (*Id.*) As Plaintiff points out, the Court previously rejected the same argument in Defendants' motion for summary judgment. (Doc. No. 394 at 20.) And, as Plaintiff further submits, Dr. Alpert testified during trial that there was no "substantial" difference between sending commands, addresses, and data over a single line as opposed to two lines. (*See, e.g.,* Doc. No. 436 at 73:14–24, 74:9–25, 75:12–25.) The

Court finds that Plaintiff did not, as Defendants claim, pursue a "baseless position" on the '654 patent, but was entitled to present expert testimony supporting its position to the jury.

Defendants' final argument is that Plaintiff's induced infringement allegations on the '654 patent were meritless, because Plaintiff failed to produce evidence of direct infringement. (Doc. No. 527 at 24–25.) Plaintiff premised its induced infringement theory on the use of microSD cards in accused devices, and Dr. Alpert relied on BlackBerry documents in testifying that users were directed to insert microSD cards into the accused devices. (*See* Doc. No. 436 at 123:13–25, 124:1–25, 125:1–24.) Because Plaintiff presented expert testimony supporting its induced infringement claim, the Court rejects Defendants' argument that Plaintiff's inducement allegations were "meritless." Accordingly, for the foregoing reasons, the Court rejects Defendants' argument that Plaintiff's pursuit of the '654 patent was objectively unreasonable and requires a finding of an "exceptional" case and an award of attorneys' fees.

### 4. The '455 Patent

#### a. Plaintiff's Challenge to Defendants' Invalidity Defenses

Defendants outline the evidence presented at trial in support of their invalidity defense (Doc. No. 527 at 16–19), and argue that this evidence left "little room for doubt that claims 13–17 of the '455 patent were invalid," and thus Plaintiff's failure to drop its infringement allegations was unreasonable. (*Id.* at 17–18.) While this is Defendants' view of the evidence, the Court finds the record more nuanced than Defendants submit. Plaintiff presented evidence that would alternatively support a finding that Defendants failed to carry their burden of proving invalidity by clear and convincing evidence. (*See, e.g.,* Doc.

No. 458 at 57:10–15.) The jury found in favor of Defendants on their invalidity claims, but this does not compel a finding that this case is exceptional. Neither does the Court find that Plaintiff's choice to forego calling Dr. Konchitsky as a rebuttal witness "conceded to the jury and to this Court that the asserted claims were, in fact, anticipated and obvious" (Doc. No. 527 at 18), but instead, reflects a strategic choice made by Plaintiff, not an admission that the asserted claims were invalid.

Defendants also argue that Plaintiff's counsel argued to the jury that "the Fischer Proposal and the Cole Presentation could not be prior art because these submissions discussed at the IEEE 802.11 meeting were not sufficiently accessible to the public," and that this "manufactured dispute" inconvenienced the witnesses and incurred additional attorneys' fees. (Doc. No. 527 at 19.) The Court disagrees that Plaintiff "manufactured" its challenge to Defendants' evidence; to the contrary, the Court finds that "public accessibility" is a question of fact, and Plaintiff properly cross-examined Defendants' witnesses on the prior art references. Likewise, the Court also rejects Defendants' contention that Plaintiff improperly suggested to the jury that Defendants failed to carry their burden on proving the Cole reference was authored by "another," because of the possibility that Gunnar Nitsche, one of the listed inventors on the '455 patent, contributed to the Cole Presentation. (*See* Doc. No. 527 at 19.) Although Defendants argue that "[t]here was no evidence at trial to support this new, never before mentioned argument," *see id.*, the Court observes that Plaintiff cross-examined Defendants' expert witnesses and obtained concessions concerning Mr. Nitsche's possible contribution to the Cole reference. (*See, e.g.,* Doc. No. 458 at 37:1–3.) Although Plaintiff did not pres-

ent any witness testimony independently corroborating this theory, Defendants had the burden of proving invalidity by clear and convincing evidence, and it was reasonable for Plaintiff to argue to the jury that Defendants had failed to meet their burden. For the foregoing reasons, the Court rejects Defendants' argument that Plaintiff's challenge to Defendants' invalidity defenses on the '455 patent was meritless and objectively unreasonable.

#### b. Plaintiff's Infringement Theory

Defendants submit that it was objectively unreasonable for Plaintiff to use the functions necessary to comply with the 802.11g standard as a "proxy for infringement," when the standards body "clearly decided" that the 802.11g standard would not adopt two transmission rules by virtue of rejecting Dr. Fischer's proposal. (Doc. No. 527 at 20.) Plaintiff objects, arguing that "no evidence" suggests that rejection of Dr. Fischer's proposal was related to the asserted claims. (Doc. No. 547 at 28.) The Court does not find that Defendants' evidence of the so-called "IEEE's dispositive treatment of Mr. Nitsche's proposal" (Doc. No. 527 at 20) merits finding that Plaintiff's pursuit of the asserted claims on the '455 patent was objectively unreasonable. First, as Plaintiff points out, Defendants did not present any evidence linking the asserted claims to the Fischer proposal, arguing that no witness testified as to how the proposal actually related to the asserted claims. Moreover, Plaintiff presented expert testimony that the 802.11g standard incorporated the asserted claims of the '455 patent. (*See, e.g.,* Doc. No. 446 at 40:22–25, 41:1–9.) Although the jury ultimately rejected this testimony, Plaintiff was entitled to present it. Accordingly, the Court does not find Plaintiff's pursuit of its infringement theory on the '455 patent, despite Defendants' presentation of the "Fischer proposal rejection" evidence,

objectively unreasonable and supportive of a finding of exceptionality.

#### B. Manner in Which NXP Litigated this Case

Defendants further assert that Plaintiff engaged in litigation misconduct justifying a finding of an "exceptional" case under the second part of the Supreme Court's reformulated Section 285 standard. *See Octane,* 134 S.Ct. at 1756 ("an 'exceptional' case is simply one that stands out from others with respect to ... the unreasonable manner in which the case was litigated."). Although *Octane* eased the standard for fee-shifting and reduced the prevailing party's burden from clear and convincing evidence to a preponderance of evidence, post-*Octane* decisions awarding fees have concerned egregious behavior. *See, e.g., Intellect Wireless, Inc. v. Sharp Corp.,* No. 10–6763, 45 F.Supp.3d 839, 849–50, 2014 WL 2443871, at *6 (N.D.Ill. May 30, 2014) (awarding fees based on false declarations before the PTO, without which, the court concluded, the plaintiff would not have obtained the patents at issue); *Cognex Corp. v. Microscan Sys., Inc.,* No. 132027, 2014 WL 2989975, at *4 (S.D.N.Y. June 30, 2014) (criticizing plaintiff for post-trial motions that simply sought to re-litigate issues decided during trial and awarding fees at least as to those motions); *Precision Links Inc. v. USA Products Group, Inc.,* No. 08–576, 2014 WL 2861759, at *3 (W.D.N.C. June 24, 2014) (criticizing plaintiff for seeking a preliminary injunction based in large part on a previously-rejected theory of liability and filing frivolous post-dismissal motions).

Defendants' request for fees is based in large part on specific positions taken by Plaintiff during the litigation. Defendants argue that Plaintiff repeatedly advocated damages theories lacking legal and factual

bases. (Doc. No. 527 at 25.) First, as previously addressed, Defendants assert that Plaintiff's damages case for the '420 patent ignored controlling law and the facts of the case with regard to the link between the cost of a smartphone battery and the alleged power savings associated with the '420 patent. (*Id.* at 26.) Defendants argue that Plaintiff's expert Mr. Weinstein had no basis for opining on the alleged power savings benefit of the '420 patent. (*Id.*)The Court rejected this argument prior to trial in its order on Defendants' *Daubert* motion, finding that Mr. Weinstein properly supported his expert report, .and that Defendants could challenge his testimony relevant to the '420 patent by cross-examination. (*See* Doc. No. 392 at 8–9.) Plaintiff's presentation of this evidence at trial was not litigation misconduct.

Next, Defendants argue that Plaintiff committed litigation misconduct justifying designating this case as "exceptional" under Section 285 by improperly suggesting "a new and unsupported royalty rate for the '420 patent" during closing arguments, after the Court had excluded Mr. Weinstein's proposed $0.40 rate per unit in its order on Defendants' *Daubert* motion. (Doc. No. 527 at 28.) Plaintiff objects to Defendants' characterization of its advocacy as misconduct, arguing that its suggestion of a royalty rate during closing argument was "nothing more than reasonable advocacy." (Doc. No. 547 at 32.) The Court acknowledges that Plaintiff's suggestion of a reasonable royalty rate during closing argument without evidence supporting its proposed rate in the record required a curative jury instruction, which the Court issued. (*See* Doc. 483 at 28.) The Court is also mindful that Defendants similarly cited disputed evidence during opening arguments, despite the Court's instruction to refer only to evidence that both parties had agreed would be admissible. (*See* Doc. No. 414 at 93:10–22 ("So my ruling is going to be this at least for now as to openings, that there—that the whole approach to discussing prior business dealings will be excluded for purpose of opening statements for both sides. And then we can ferret out this 408 issue."); Doc. No. 414 at 160:6–8 ("So I believe Counsel just opened the door to the proposal that was made by IPVALUE to NXP. He talked about IPVALUE making an evaluation on behalf of NXP.").) In the context of the trial, and having "live[d] with the case over a prolonged period of time," *see Highmark*, 134 S.Ct. at 1748, the Court does not find that Plaintiff's suggestion of a royalty rate during closing argument, in light of the curative instruction that Defendants obtained, requires a finding of litigation misconduct supportive of a declaration that this case is exceptional.

Finally, Defendants argue that Plaintiff committed litigation misconduct by asking its expert to rely on an allegedly flawed regression analysis in formulating his damages opinion regarding the '654 patent. (Doc. No. 527 at 29–30.) Plaintiff points out that Defendants' attack on Mr. Weinstein's damages opinion on the '654 patent "effectively presents a new *Daubert* challenge," and Defendants' failure to raise this challenge earlier weighs against a finding that Plaintiff's conduct was unreasonable. (Doc. No. 547 at 32.) The Court observes that Defendants previously praised Mr. Weinstein's regression analysis in their *Daubert* motion seeking to exclude his alternative valuation of damages for the '654 patent: "This lack of analysis for his 'alternative' rate is in stark contrast to his fair, reasonable, and non-discriminatory ("FRAND") royalty rate. For the FRAND royalty rate, Mr. Weinstein includes an appendix with seven pages of analyses and calculations...."

(Doc. No. 308 at 20–21.) To now argue that Plaintiff engaged in litigation misconduct by virtue of relying on this "substantially flawed" regression analysis is inconsistent, and an issue previously raised in Defendants' *Daubert* motion. The Court finds that it does not support a declaration of an "exceptional" case justifying an award of attorneys' fees under Section 285.

As a general matter, the Court observes that the dispute at issue was the subject of spirited advocacy by exceptionally skilled and seasoned litigators who presented their positions to the best possible advantage. No opportunity to win an advantage was overlooked, often resulting in the need for the Court to intervene in discovery disputes and rule on disputed evidentiary matters more often than is ordinarily necessary. Any delay, expense or inconvenience that resulted is a shared responsibility of the parties. As to those matters presided over by the undersigned, the Court observed Plaintiff's counsel to conduct themselves professionally and reasonably in their dealings with opposing counsel and the Court. Counsel did not obstruct, file frivolous motions, or pose baseless objections. Where Plaintiff's counsel were able to accommodate the Court and defense counsel without compromising their obligations to their clients, counsel readily agreed to do so.

Defendants' suggestion that the two years required to bring this matter to conclusion reflects poorly on Plaintiff is wholly unsupported. The case was filed on April 2, 2012. Chief Judge Conway issued a scheduling order on July 27, 2012, listing the case for trial on the court's March 3, 2014 calendar. Although case reassignment necessitated a slight adjustment to that schedule, the case was tried to a jury in March 2014. The schedule was dictated by local practice, the court's docket and the complex nature of the dispute. Plaintiff did nothing to impede the progress of the case, nor can it be said that Plaintiff misused the court system for business advantage or engaged in any gamesmanship or misconduct.

## IV. CONCLUSION

For the foregoing reasons, and considering the totality of the circumstances of this case, the Court will deny Defendants' motion to declare this action "exceptional" and award attorneys' fees pursuant to 35 U.S.C. § 285. An order consistent with this memorandum follows.

### *ORDER*

**AND NOW, THIS** 21st day of October 2014, **IT IS HEREBY ORDERED THAT** Defendants' motion for declaration of an exceptional case and an award of fees (Doc. No. 527) is **DENIED.**

